In re Wayne E. **DONDERO** and Virginia M. Dondero, Debtors.

Bankruptcy No. 685–08462.

United States Bankruptcy Court, D. Oregon.

March 18, 1986.

Barry L. Taub, Eugene, Ore., for debtors.

Michael W. Doyle, Perrin, Gartland & Doyle, Eugene, Ore., for creditor.

## MEMORANDUM OPINION

POLLY S. WILHARDT, Bankruptcy Judge.

This matter is before the court upon objection of Provo Railroad Credit Union (Creditor) to the chapter 13 plan of reorganization filed by Wayne E. Dondero and Virginia M. Dondero (Debtors). Creditor holds two claims against the Debtors. The first is an unsecured claim which Debtors list in their schedules as $1,884.96 and on which Debtor Wayne E. Dondero is obligated as a co-signor on his son's account. (Creditor has stated that its proof of claim will be for approximately $2,800.00 on the basis of a judgment rendered against the Debtor). The second is a debt of $5,400.00 upon which both Debtors are obligated.

In their plan dated September 17, 1985, Debtors proposed to treat Creditor's claims as follows:

> From the balance remaining after the above payments, dividends to unsecured creditors whose claims are fully proved and allowed as follows: ... 100% extension except that Provo R.R. Credit Union to be paid at 10% composition pursuant to 11 USC Section 1322(b)(1). *Debtors' Chapter 13 Plan dated September 17, 1985(2)(d).*

Creditors object for two reasons. First, Creditors argue that the $5,400.00 debt is wrongly classified since it is at least partially secured by a 1968 jeep valued at approximately $650.00. Creditor states that the jeep was not listed as an asset of the estate and no mention of security was made in the schedules. Creditor argues that this debt must be paid in full to the extent it is secured. The remaining unsecured portion, argues the Creditor, should

be treated like all other unsecured debts and paid at 100% extension. Second, Creditor argues that Debtors unfairly discriminate against them by proposing to pay their claim on which Debtor Wayne E. Dondero is co-signator at 10% composition based on § 1322(b)(1). Creditors also point out that the original plan does not differentiate between the two claims Creditor holds, and implies that both claims are to be paid at 10% extension.

Debtors filed an order confirming the plan in which order Debtors amended the plan clarifying that only the co-signed debt was to be paid at 10% extension. Thus, the unsecured portion of the debt upon which Debtors only are liable is to be treated like all other unsecured claims.

This court must now determine whether Debtors' invocation of § 1322(b)(1) enabling the separate classification of the co-signed debt, constitutes unfair discrimination since Debtors propose to pay Creditor's claim at a 10% extension rather than at a 100% extension like all the other unsecured claims.

Section 1322(b)(1) provides:

Subject to subsections (a) and (c) of this section, the plan may—(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if any individual is liable on such consumer debt with the debtor differently than other unsecured claims;

Section 1322(b)(1) specifically permits a debtor to separately classify and differently treat a consumer debt, if an individual is liable on such debt with the debtor. In *In re Perkins*, 13 Bankr.Ct.Dec. (CRR) 811, 55 B.R. 422 (Bankr.N.D.Okla. 1985) the court upheld a plan which proposed 100% repayment to the one creditor holding an unsecured claim co-signed by the debtor's son and which was secured by an interest in the son's household goods, while proposing payment of approximately 22% to all other unsecured creditors. The court found that

such discrimination was in good faith and noted that absent such discrimination the debtors would not be able to carry out a plan since the debtors would attempt to repay the co-signed debt outside the plan to protect their son from creditor pressure thus making it financially more difficult for the debtor to make his plan payments.

This court believes that the "different" treatment which § 1322(b)(1) permits of unsecured creditors who hold claims co-signed by the debtor and a third party permits the debtor to pay such claims at a higher composition than other unsecured claims. It does not permit the debtor to pay such claims at a lower composition. Legislative history bears out this interpretation.

Because codebtors are often relatives or friends, the debtor may feel a great need to pay the debt in full, even if that is not permitted within the chapter 13 plan. If the debtor can be required to devote all disposable income to the plan, the conflicting desire to voluntarily make payments outside the plan on a cosigned debt may spell failure for the plan by leaving insufficient income to keep up plan payments. 5 *Collier on Bankruptcy*, 1322–8 (15th ed.) citing to S.Rep. No. 65, 98th Cong., 1st Sess., 17–18 (1983) (footnotes omitted).

Debtors point out correctly that this legislative history pertains to S.445, referred to as the "Omnibus Bankruptcy Improvements Act of 1983" which was never enacted into law.

In discussing the 1984 amendments to the code, Assistant Professor of law Irving A. Breitowitz states:

The legislative history of the bill as finally enacted is sparse.... Nevertheless, there are Senate reports on two earlier versions of the law—S.2000 and S.445—which provide valuable insight into the purpose and interpretation of many provisions which survive in the current version of the law. These reports ... furnish an opportunity for an informed evaluation of the empirical basis and policy judgments that underlie these changes.

Breitowitz, *New Developments in Consumer Bankruptcies: Chapter 7 Dismissal on the Basis of "Substantial Abuse"* 59 Am.Bankr.L.J. 327, 336 (1985).

S.445 proposed to amend § 1322(b)(1) to provide that a plan may

designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims which are specified in section 523(a) or involve a codebtor differently than other unsecured claims; Sec.219, Omnibus Bankruptcy Improvements Act of 1983.

Thus both S.445 and § 1322(b)(1) provide for treating claims "differently" where a codebtor is involved. The bill which was finally passed narrowed the scope of S.445. The words claims "specified in § 523(a)" were replaced by claims "for a consumer debt of the debtor." The words "if an individual is liable on such consumer debt with the debtor" were inserted. The effect of these changes is that to be treated "differently" under § 1322(b)(1) a claim must be one for a consumer debt of the debtor; and an individual, not an entity, must be liable on such debt with the debtor. Therefore this court finds that legislative history pertaining to S.445 which illuminates Congressional intent in using the word "differently" regarding claims involving a codebtor may aid the court in its interpretation of the word "differently" in what is now § 1322(b)(1).

A more practical reason for interpreting § 1322(b)(1) not to permit a debtor to pay less on a co-signed consumer debt is that the code does not provide either the court or the trustee with a mechanism to allow them to confirm that the nondebtor co-signor is paying the obligation. As the assumption that the creditor will be paid by a third party is the basis for the Debtors' argument for a lower percentage of payments through the plan, this court believes that to eliminate the possibility of unfair discrimination, before granting the Debtor his discharge the court would need to confirm the third party payments had been

made. As the third party is not within the court's jurisdiction, it has no authority to assure this precondition has been met. Provo Railroad Credit Union's objection to the Dondero's treatment of the claim upon which Wayne E. Dondero is liable as a co-signator should be sustained. Confirmation of the Debtors' chapter 13 plan should be denied.

An order consistent herewith will be entered.