**In re Orlando M. DIAZ, Janice E. Diaz, Debtors.**

**Bankruptcy No. 2–88–06635.**

United States Bankruptcy Court, S.D. Ohio, E.D.

March 24, 1989.

Robert H. Farber, Jr., Columbus, Ohio, for debtors.

Waymon B. McLeskey, II, Porter, Wright, Morris & Arthur, Columbus, Ohio, for The Huntington Nat. Bank.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

Charles M. Caldwell, Columbus, Ohio, Asst. U.S. Trustee.

ORDER SUSTAINING OBJECTION TO CONFIRMATION

R. GUY COLE, Jr., Bankruptcy Judge.

This matter is before the Court upon the Objection to Confirmation ("Objection")

filed by The Huntington National Bank ("HNB"). The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(1) and (2)(L). The following opinion and order shall constitute the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

HNB objects to the confirmation of the Amended Chapter 13 plan ("Plan") proposed by Orlando M. and Janice E. Diaz ("Debtors"). The gravamen of HNB's Objection is that the classification of HNB's unsecured claim under the Plan is unfairly discriminatory and, hence, violative of 11 U.S.C. § 1322(b)(1). HNB is the holder of a co-signed, partially-secured claim arising from a promissory note dated March 4, 1986. The note is collateralized by a 1986 Dodge Omni. Nikki Barker and Jeffrey Cundiff are jointly obligated along with Debtors to HNB. The collateral is titled in the name of Nikki Barker. The provision of the Plan which HNB asserts is unfairly discriminatory provides as follows:

> "Claim on which debtor was a co-signer for Nikki Barker shall be treated as contingent to be paid outside the Plan by primary obligor. Upon default of primary obligor, this claim shall be paid inside debtors' Plan at 5 cents on the dollar."

Plan at 2. This Plan provision violates 11 U.S.C. § 1322(b)(1)'s prohibition against unfair discrimination, HNB asserts, because it provides less favorable treatment for the unsecured contingent claim of HNB (*i.e.*, the deficiency which presumably would arise upon default by the co-signer and subsequent repossession and sale of the collateral by HNB) than is provided to other holders of unsecured claims under the Plan who shall receive a 70% dividend.

The separate classification and treatment of HNB, Debtors argue, is authorized by 11 U.S.C. § 1322(b)(1), which provides as follows:

> (b) Subject to subsections (a) and (c) of this section, the plan may—

> (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; *however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims; ....* (Emphasis added).

According to Debtors, because § 1322(b)(1) permits co-signed claims to be treated differently than other unsecured claims, the Plan's treatment of HNB's claim should not be found to be unfairly discriminatory. Alternatively, Debtors assert that the contingent nature of HNB's claim also justifies its separate classification.

In support of its Objection HNB cites the decision of *In re Dondero*, 58 B.R. 847, 848 (Bankr.D.Or.1986). In *Dondero* the bankruptcy court faced the identical legal issue as that involved here: whether § 1322(b)(1)'s sanction of different treatment for co-signed claims authorizes less favorable treatment of such claims *vis-a-vis* other unsecured claims. Concluding that § 1322(b)(1) does not allow for less favorable treatment of co-signed claims, the *Dondero* court reasoned as follows:

> This court believes that the "different" treatment which § 1322(b)(1) permits of unsecured creditors who hold claims co-signed by the debtor and a third party permits the debtor to pay such claims at a higher composition than other unsecured claims. It does not permit the debtor to pay such claims at a lower composition. Legislative history bears out this interpretation.

> Because codebtors are often relatives or friends, the debtor may feel a great need to pay the debt in full, even if that is not permitted within the chapter 13 plan. If the debtor can be required to devote all disposable income to the plan, the conflicting desire to voluntarily make payments outside the plan on a cosigned debt may spell failure for the plan by leaving insufficient income to keep up plan payments. 5

*Collier on Bankruptcy*, 1322–8 (15th ed.) citing to S. Rep. No. 65, 98th Cong., 1st Sess., 17–18 (1983) (footnotes omitted).

58 B.R. at 848. The court added:

A more practical reason for interpreting § 1322(b)(1) not to permit a debtor to pay less on a co-signed consumer debt is that the code does not provide either the court or the trustee with a mechanism to allow them to confirm that the nondebtor co-signor is paying the obligation. As the assumption that the creditor will be paid by a third party is the basis for the Debtors' argument for a lower percentage of payments through the plan, this court believes that to eliminate the possibility of unfair discrimination, before granting the Debtor his discharge the court would need to confirm the third party payments had been made. As the third party is not within the court's jurisdiction, it has no authority to assure this precondition has been met.

58 B.R. at 849.

This Court concurs with the rationale and the holding of the *Dondero* decision. The Debtors have not cited, and the Court's independent research has not revealed, a single reported decision supporting the facile interpretation of 11 U.S.C. § 1322(b)(1) urged by the Debtors. The legislative purpose of § 1322(b)(1)'s co-signer proviso is to permit preferential treatment of co-signed claims under certain circumstances. Because such claims are often held by relatives and friends, if such flexibility in classification were not afforded, the pressure felt by a Chapter 13 debtor to satisfy such co-signed obligations outside the plan would hamper his successful performance under the plan. Neither law nor logic supports a construction of § 1322(b)(1) which would allow less favorable treatment for co-signed claims than that accorded to other unsecured claimholders.

The other basis asserted in support of Debtors' proposed separate classification of HNB is the contingent nature of HNB's claim. Again, Debtors have offered no statutory or decisional authority in support of their legal position. Because the HNB claim is contingent and the discriminatory effect of the Plan may therefore never actually inure to the detriment of HNB, Debtors argue that HNB's separate classification is appropriate here. The Court disagrees. As HNB has correctly pointed out, it must voice its opposition to any provision in the Plan it deems objectionable as of the confirmation hearing. HNB would risk the preclusive effect of the doctrine of *res judicata* were it to delay lodging its objection to confirmation until the happening of later events which would alter the contingent nature of its claim—*i.e.,* default by the nondebtor co-signers and repossession and sale of its collateral—and thereby trigger the discriminatory effect of Debtors' Plan. *See, In re Fitak*, 92 B.R. 243, 249 (Bankr.S.D.Ohio 1988) and cases cited therein. Accordingly, the mere fact that the HNB claim is contingent does not provide a valid basis for its separate classification and different treatment in this case.

Based upon the foregoing, the Objection to Confirmation filed by The Huntington National Bank is hereby SUSTAINED. Pursuant to LBR C–3.18.18(b), the Debtors shall have twenty (20) days from the confirmation hearing to take whatever action as may be appropriate to place the Plan in a posture for confirmation. If no such action is taken, the Court shall dismiss this case.

IT IS SO ORDERED.