**In re Elizabeth K. DORNON, Debtor.**

**Bankruptcy No. 88–01432.**

United States Bankruptcy Court,
N.D. New York.

May 26, 1989.

James F. Selbach, P.C., Syracuse, N.Y., for debtor.

Warren V. Blasland, Syracuse, N.Y., trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

Elizabeth K. Dornon ("Debtor") filed her petition seeking relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp.1989) ("Code"), on September 20, 1988 and submitted her plan the same day. She listed two unsecured debts in her petition: a student loan in the amount of $4,985.51 owed to "NYSHESC," presumably the New York State Higher Education Services Corporation, and a loan for $2,104.92 from Key Bank. Against this debt of $7,090.43, the Debtor indicated assets of $1,125.00, consisting entirely of her state exemptions.

The Debtor takes home $920.00 each month as an assembler for the Welch Allyn, Inc., where she has been employed for three years. A resident of Weedsport, New York, she has two children, who are her dependents. In her schedule of current income and current expenditures, she added $110.00 each month, representing one-twelfth of her income tax refund, to generate a monthly income of $1,130.00 against current monthly expenditures of $970.00.

The Debtor proposes to pay the Trustee $60.00 per month for a period of sixty months. Her plan also seeks to pay in full Key Bank's claim, which is co-signed by her mother, under Code § 1322(b)(1) and further contemplates a ten percent distribution to the remaining creditor, NYSH-ESC.

The first meeting of creditors pursuant to Code § 341 was conducted on November 16, 1988 and at the November 18, 1988 hearing on plan confirmation, the Trustee objected to confirmation on the basis that the plan was not filed in good faith.

Decision was reserved and upon the parties' filing of memoranda of law, the matter was submitted on February 14, 1989.

## JURISDICTION

The Court has jurisdiction over this core proceeding by virtue of 28 U.S.C.A. §§ 1334 and 157(a), (b)(1), (2)(L) (West Supp.1989). The following findings of fact and conclusions of law are issued in accordance with Bankruptcy Rules ("Bankr.R.") 2002(b), 3020(a), 7052, 9014.

## ARGUMENTS

The Trustee takes the position that the Debtor's treatment of the Key Bank debt, which her mother had co-signed, as a special class with a one hundred percent distribution and a ten percent payout on her NYSHESC student loan, which would be nondischargeable in a Chapter 13 [sic], demonstrates that the plan was not filed in good faith. *See* Letter from Warren V. Blasland, Esq. to the Honorable Stephen D. Gerling (Dec. 5, 1988). Noting that she switched from studying data processing to nursing during two years of community college, he states that "no evidence was shown to indicate any reasons why the debtors future income would not increase over the next five year period." *Id.*

Relying upon this Court's decision in *In re Makarchuk*, 76 B.R. 919 (Bankr.N.D.N.Y.1987), the Trustee asserts that confirmation should be denied because the primary and principal purpose of the Debtor's plan was to discharge an otherwise nondischargeable student loan debt. He claims that the student loan debt was the only claim the plan actually deals with since the Key Bank claim is to be fully paid. *See id.*

The Debtor responds that she is a single, unmarried parent supporting her two children with no assistance from their father. She states that she incurred the student loan while attending a local community college and living on public assistance, but was forced to take on the factory job because of insufficient income, whereupon her welfare payments terminated. She ultimately was forced to quit school because it became impossible to do that and support her family.

The Debtor distinguishes her situation from that of the debtor in *In re Makarchuk* by pointing out that in that case 1) the only claims were education loans, 2) the debtor converted to Chapter 13 from a Chapter 7 after unsuccessfully trying to discharge those loans under Code § 523(a)(8)(B) in a Chapter 7 context, 3) her creditors had filed written objections, and 4) she proposed a thirty-six month plan. *See* Debtor's Memorandum Of Law In Response To The Trustee's Objection To Confirmation Of Plan (Feb. 3, 1989). Furthermore, she is attempting to repay one debt and simultaneously protect her mother who co-signed the other obligation, a fact she attested to at her § 341 meeting, unlike Laura Makarchuk whose primary purpose was to discharge her otherwise nondischargeable student loans.

The Debtor argues that there is nothing in the record to indicate she is acting contrary to the "honesty of intention" standard for good faith set forth by the Second Circuit in *Johnson v. Vanguard Holding Corp. (In re Johnson)*, 708 F.2d 865 (2d Cir.1983) and expanded by this Court in *In re Sutliff*, 79 B.R. 151 (Bankr.N.D.N.Y. 1987). She maintains that, consistent with the spirit and purposes of Chapter 13, her plan is an honest, good faith attempt to repay her creditors within her means and she is entitled to the more generous discharge available to her than what would be in Chapter 7. *See id.*

## DISCUSSION

While articulated as a good faith objection to plan confirmation presumably made pursuant to Code § 1325(a)(3), the Trustee's objection also invokes Code § 1325(a)(1) and, hence, Code § 1322, in challenging the Debtor's classification of claims. Such judicial scrutiny is in accord with Code § 1325(a), mandating as it does, six prerequisites to confirmation, notwithstanding the absence of specific written objections. *See In re Johnson, supra,* 708 F.2d at 867.

The Court hereby makes a finding that the Debtor's plan complies with Code § 1325(a)(2), (4), (5) and (6).

First, the Court assumes there are no unpaid fees, charges or amounts due under 28 U.S.C.A. § 1930 (West Supp.1989) or under the plan since the record is silent on such matters. Code § 1325(a)(2).

■ Second, it is clear that the only property the plan will distribute to the two unsecured creditors is the Debtor's future disposable income since her personal property schedule indicates an estate consisting of personal belongings, some cash and an automobile. The creditors' zero dividend in a Chapter 7, without even considering the hypothetical liquidation expenses, is obviously less than their Chapter 13 plan distribution, more than satisfying the "best interests of creditor's test" of Code § 1325(a)(4). *See, e.g., In re Hieb,* 88 B.R. 1019, 1021–23 (Bankr.D.S.D.1988); *In re Barth,* 83 B.R. 204 (Bankr.D.Conn.1988).

Third, as there are no secured claims, Code § 1325(a)(5) is inapplicable.

Fourth, while the Court acknowledges that the Debtor's budget is tight, it is based upon realistic expenses and steady and regular income. The record's silence on any default and the Court's reluctance to impose upon the Debtor its own conception of what sacrifices she should make,

lead it to give her the opportunity to implement her proposed plan. *See In re Compton*, 88 B.R. 166, 167 (Bankr.S.D.Ohio 1988); 5 L.King COLLIER ON BANKRUPTCY ¶ 1325.07 (15th ed. 1989). The Court thus concludes that the Debtor has demonstrated feasibility under Code § 1325(a)(6).

■ With regard to the classification challenge triggering Code § 1322(b)(1), the Court finds itself bound by the plain statutory language of the amendment enacted by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) ("BAFJA"). *See, e.g., In re Hobaica*, 65 B.R. 693, 695 (Bankr.N.D.N.Y.1986). Said amendment automatically sanctions different and favored treatment for a debtor's consumer debts which are co-signed by another individual and constitutes a "carve out" to the "unfair discrimination" standard; *see, e.g., In re Lawson*, 93 B.R. 979 (Bankr.N.D.Ill. 1988) (discussing "four factor" test developed by the courts but choosing to limit the inquiry to one of reasonableness), imposed upon a debtor's exercise of the option to designate unsecured debt into more than one class. *See In re Diaz*, 97 B.R. 903 (Bankr.S.D.Ohio 1989); *In re Storberg*, 94 B.R. 144, 146 & n. 3 (Bankr.D.Minn.1988); *In re Dondero*, 58 B.R. 847 (Bankr.D.Or. 1986). *Accord Public Finance Corp. v. Freeman*, 712 F.2d 219 (5th Cir.1983). *Contra Nelson v. Easley (In re Easley)*, 72 B.R. 948, 955–56 (Bankr.M.D.Tenn.1987). However, this different treatment, designed to encourage the utilization of Chapter 13 rather than Chapter 7, must still satisfy Code § 1325(a). *See, e.g., In re Birriel Gonzalez*, 73 B.R. 259 (Bankr.D. Puerto Rico 1987).

Assuming arguendo that the amendment is "awkwardly worded," *In re Easley, supra*, 72 B.R. at 956, Congressional intent can be gleaned from BAFJA's quasi-legislative history given the lack of official legislative history on Code § 1322(b)(1):

> "Although there may be no theoretical differences between co-debtor claims and others, there are important practical differences" that must be recognized. Because codebtors are often relatives or friends, the debtor may feel a great need to pay the debt in full, even if that is not permitted within the chapter 13 plan. If the debtor can be required to devote all disposable income to the plan, the conflicting desire to voluntarily make payments outside the plan on a co-signed debt may spell failure for the plan by leaving insufficient income to keep up plan payments. "If, as a practical matter, the debtor is going to pay the codebtor claim, he should be permitted to separately classify it in chapter 13."

5 COLLIER ON BANKRUPTCY, *supra*, ¶ 1322.05 at 1322–9 to 1322–10 (footnotes omitted) (citing to S.REP. NO. 65, 98th Cong., 1st Sess., 17–18 (1983) [S. 445] ("Senate Report"), *quoted in In re Dondero, supra*, 58 B.R. at 848).[1]

The Senate Report also focused on the amendment's ability to thwart a "ripple effect" where the debtor's inability to pay the co-signed debt could create pressure threatening his "fresh start" by, for instance, brewing trouble on the work or home front or triggering the co-debtor's financial difficulties or even a bankruptcy filing. *See 5 COLLIER ON BANKRUPTCY, supra*, ¶ 1325.05[1] at n. 12 (quoting to Senate Report at 17). *Accord In re Todd*, 65 B.R. 249, 253 (Bankr.N.D.Ill.1986); *In re Perkins*, 55 B.R. 422, 426 (Bankr.N.D. Okla.1985).

---

**1.** Another commentator, commenting on BAFJA's sparse legislative history, has noted that the Senate reports on two earlier versions of the law—S. 2000 and S. 445— ... provide valuable insight into the purpose and interpretation of many provisions which survive in the current version of the law. These reports explain in great detail the arguments in favor of changing the Code and furnish an opportunity for an informed evaluation of the empiri-

cal basis and policy judgments that underlie these changes.

Breitowitz, *New Developments in Consumer Bankruptcies: Chapter 7 Dismissal on the Basis of "Substantial Abuse"*, Part 1, 59 AM.BANKR. L.J. 327, 336 (1985) (footnotes omitted), *quoted in In re Dondero, supra*, at 58 B.R. at 848–49. Accordingly, the usefulness of this quasi-legislative history cannot be underscored enough.

There has been no indication that the Debtor is anything but a consumer debtor or that she did not use the funds from the Key Bank loan primarily for personal, family or household purposes. *See* Code § 101(7). Thus, the Court finds her debt to Key Bank, co-signed by her mother, to be a consumer debt falling within the exception of Code § 1322(b)(1). Accordingly, her plan's different treatment of her two unsecured claims is permissible and satisfies Code § 1325(a)(1).

■ Turning to the good faith objection, the Court must agree with the Debtor on every account. Her case is indeed distinguishable from the debtor's situation in *In re Makarchuk, supra,* and, as such, is not applicable herein. The Debtor is honestly and sincerely striving to propose a plan two years beyond the statutory prescription with every last bit of her disposable income while supporting her two children. *See In re Doersam,* 849 F.2d 237, 239 (6th Cir.1988) (listing factors). She is fueled by not one but two objectives—to protect her mother by paying out the Key Bank loan and to satisfy, to the best of her ability, her student loan, the fruits of which do not appear to be contributing to her income. Moreover, "a good faith proposal of a Chapter 13 plan does not require the substantial repayment of unsecured creditors," *In re Sutliff, supra,* 79 B.R. at 154, or prohibit the equal treatment of claims that would not be dischargeable in Chapter 7 with other unsecured claims. *See In re Lawson, supra,* 93 B.R. at 988.

■ A debtor cannot be penalized by exercising her statutory right to the fresh start of a Chapter 13 "super discharge," extending to all but alimony, support and maintenance and long term debt, for Congress has deemed it a fair exchange for a three to five year voluntary re-commitment to debt obligation under court supervision. *See* Code § 1328(a). *See generally In re Lambert,* 10 B.R. 223 (Bankr.E.D.N.Y. 1981); *see also In re Owens,* 82 B.R. 960, 966 (Bankr.N.D.Ill.1988) (citing *In re Rimgale,* 669 F.2d 426, 428 (7th Cir.1982)); *In re Makarchuk,. supra,* 76 B.R. at 923.

Furthermore, her budget is skeletal, with no frills or cushion, and the record reveals neither serious misconduct nor abuse nor anything less than full disclosure to justify a finding that her plan was proposed in bad faith. *See In re Smith,* 848 F.2d 813, 819 (7th Cir.1988); *In re Sutliff, supra,* 79 B.R. at 155 (quoting 5 COLLIER ON BANKRUPTCY, *supra,* ¶ 1325.04 at 1325–17). Under the facts of this case, the totality of circumstances establishes plan compliance with Code § 1325(a)(3), in the context of both good faith and "not by any means forbidden by law." *See Hardin v. Caldwell (In re Caldwell),* 851 F.2d 852, 860 (6th Cir.1988); *In re Smith, supra,* 848 F.2d at 813; *In re Chaffin,* 816 F.2d 1070, 1073 (5th Cir.1987).

By reason of the foregoing, it is hereby ORDERED:

1. That the Trustee's good faith objection to the confirmation of the plan, pursuant to Code § 1325(a)(3), is denied, and

2. That the Debtor's Chapter 13 plan is confirmed, having complied with the remaining five requirements of Code § 1325(a).