**In re Michael Claude LEWMAN and Peggy April Lewman, Debtors.**

**Bankruptcy No. 92–2033–RWV–13.**

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

June 11, 1992.

Robert A. Brothers, Indianapolis, IN, Ch. 13 Trustee.

William L. Price, Indianapolis, IN, for debtor.

### ORDER DENYING CONFIRMATION OF PLAN

RICHARD W. VANDIVIER, Bankruptcy Judge.

This matter comes before the Court on the Objection to Confirmation ("the Objection") filed by the Chapter 13 Trustee on April 24, 1992, objecting to the confirmation of the Chapter 13 Plan ("the Plan") filed by the Debtors on February 25, 1992. The Court now sustains the Objection the denies confirmation of the Plan for the following reasons.

In the Plan, the Debtors propose to pay approximately 10 percent on their unsecured claims, except for one claim which they separately classify and propose to pay in full. The latter claim, in the amount of $7400.00 according to the Plan, is owing to the Educational Loan Servicing Center ("the ELSC") and arose from a government insured "Parent–Plus" educational loan. The special treatment for this debt is based on the Debtors' assertion that the debt is nondischargeable under 11 U.S.C. section 1328(a)(2).

In the Objection, the Trustee asserts that the ELSC loan was made for their son's benefit and that the Debtors are merely guarantors. (The Objection also indicates that there are actually two loans involved in the amounts of approximately $4000.00 and $3700.00, and that the Debtors seek to prefer only the larger loan, since the smaller one has not yet matured. However, these factual questions are immaterial to resolution of this matter.) The Trustee contends that as guarantors, the Debtors may discharge the debt and therefore there is no basis for separate classification and more favorable treatment of this debt.

Although education related debts used to be dischargeable in Chapter 13, they are now dischargeable only to the extent they would be dischargeable in Chapter 7. *See*

11 U.S.C. sections 1328(a)(2) and 523(a)(8). Thus, a Chapter 13 discharge does not discharge a debtor from a debt:

for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of filing of the petition, or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents....

11 U.S.C. section 523(a)(8).

Authorities differ on whether 523(a)(8) should apply to non-student debtors who procured, co-signed or guaranteed educational loans for their children or spouses. Some courts have determined that the exception by its terms unambiguously applies to such a debtor, even though the debtor did not receive the educational benefit. *See e.g. In re Hammarstrom*, 95 B.R. 160 (Bankr.N.D.Cal.1989). Others though have decided a loan is not an "educational" loan as to the debtor if the debtor only co-signed or guaranteed the loan of the student-borrower. *See e.g. In re Pelkowski*, 135 B.R. 254 (Bankr.W.D.Pa.1992). Courts are less sympathetic to those (usually parents) who took out loans in their own names for a student who is not liable on the loan. *See Pelkowski*, 135 B.R. at 256. However, the Court does not need to resolve the issue of dischargeability to rule on the Trustee's Objection.

■ Since education related debts were made nondischargeable in Chapter 13, courts have been faced with the question of whether the debtor may classify these debts separately from other unsecured debts and pay a greater dividend, possibly 100 percent, on the former. The courts have shown a clear trend to deny confirma-

tion of such plans, finding the proposed classification to be unfair discrimination. *See e.g. In re Tucker*, 130 B.R. 71 (Bankr. S.D.Iowa 1991); *In re Scheiber*, 129 B.R. 604 (Bankr.D.Minn.1991). While one court has permitted a plan that proposed to pay the student loan first, followed by 100 percent payment of other unsecured debts, *see In re Foreman*, 136 B.R. 532 (Bankr. S.D.Iowa 1992), the Court is aware of no case in which a debtor has been allowed to pay a higher dividend on student loans compared to other unsecured debts solely because of their nondischargeability.

The Court agrees with the emerging case law. Even assuming that the debt to ELSC is nondischargeable, that fact alone would not support separate classification and more favorable treatment than other unsecured debts. Dischargeability will become an issue only when the Debtors are eligible for discharge, which will be on completion of a Chapter 13 plan. *See* 11 U.S.C. section 1328(a).

Another possible basis for separate classification is the fact that the debt to ELSC involves a codebtor. While a Chapter 13 plan may not unfairly discriminate against any class of unsecured claims, a plan "may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims...." 11 U.S.C. section 1322(b)(1) ("the Codebtor Classification"). The Court will assume that an educational loan for a family member fits within the definition of a consumer debt, i.e. a "debt incurred by an individual primarily for personal, family, or household purposes...." 11 U.S.C. section 101(8).

■ While the Codebtor Classification allows separate classification of consumer debts on which codebtors are liable, it does not dictate that all such classifications pass muster. Legislative history explains that the Codebtor Classification was added to deal with two undesirable practicalities—first, when others, often friends or relatives, are co-liable on a debt, a debtor may feel compelled to spare the codebtor by paying the debt in full outside the plan,

leaving insufficient disposable income to successfully complete plan payments; and second, a debtor's inability to pay the debt may have a ripple effect by forcing the codebtor into bankruptcy when the liability falls on the codebtor. *See* 5 Collier on Bankruptcy, para. 1322.05[1] (15th Ed.), *citing* S.Rep. No. 65, 98th Cong., 1st Sess. 17–18 (1983). (While the bill to which this Senate Report pertained was not enacted, the provision to which it was addressed is very similar to the one that was eventually enacted, and thus still serves to illuminate congressional intent. *See In re Dondero*, 58 B.R. 847, 848–49 (Bankr.D.Ore.1986).)

■ With these purposes in mind, courts have refused to confirm plans that would treat codebtor debts *less* favorably than other unsecured debts. *See e.g. In re Diaz*, 97 B.R. 903 (Bankr.S.D.Ohio 1989); *In re Dondero*, 58 B.R. at 848–49. The Codebtor Classification simply means that separate classification and treatment on the sole basis of codebtor liability is not *per se* unfair discrimination. Debtors still bear the burden of showing that separate classification and treatment of unsecured claims does not unfairly discriminate. *See In re Perkins*, 55 B.R. 422, 425 (Bankr. N.D.Okla.1985).

■ The Debtors apparently desire, in essence, to pay their son's student loan in full (or at least the part that is already matured), relieving him of a debt on which he is primarily liable (and which the Debtors may never be called on to pay, if he pays the debt) with funds that would otherwise be available to the Debtors' other unsecured creditors, while protecting their son from collection efforts for the duration of the Plan. In these circumstances, the Court finds that the Debtors' attempt to separately classify and favorably treat the ELSC debt does not comport with the purposes of the Codebtor Classification. Disallowing the separate classification and favorable treatment should not compel the Debtors to pay the debt in full anyway to spare their son an obligation that is not justly his; and if the ELSC liability happens to precipitate the son's bankruptcy, it won't be because the Debtors' bankruptcy

shifted an unexpected liability on him. Absent compelling circumstances showing otherwise, it would be unfair for a debtor to use the Codebtor Classification to pay a contingent liability in full, thus relieving a nondebtor of his or her primary liability on the debt, with funds that could be applied to unsecured debts on which the debtor is primarily liable.

Because separate classification is not justified either because the ELSC debt is arguably nondischargeable or because the Debtors' son is a codebtor, the Court concludes that the separate classification and favorable treatment of the ELSC debt unfairly discriminates against the Debtors' other unsecured creditors and that the Plan cannot be confirmed.

Therefore, the Court SUSTAINS the Trustee's Objection and DENIES confirmation of the Debtors' Plan. The Debtors shall have twenty days from the date of this order to file an amended Chapter 13 plan consistent with this opinion.

SO ORDERED.