**In re Douglas A. BURNIP, Loni S. Burnip, Debtors.**

**Bankruptcy No. 98–56866.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Jan. 27, 1999.

Frank M. Pees, Chapter 13 Trustee, Worthington, Ohio.

Robert J. Morje, Columbus, Ohio, for debtors.

Robert B. Berner, Debra A. Willet, Arter & Hadden LLP, Columbus, Ohio, for Thomas R. Noland, Trustee for National Liquidators, Inc.

*ORDER ON OBJECTION*
*TO CONFIRMATION OF*
*CHAPTER 13 PLAN*

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

The matter is before the Court for consideration of the Amended Chapter 13 Plan of Reorganization filed by Douglas A. Burnip and Loni S. Burnip ("Debtors"), and the objection filed by Thomas R. Noland as Chapter 11 Trustee of National Liquidators, Inc. ("Noland"). The issue to be decided is the permissibility of Debtors separately classifying certain claims held by Noland, and paying those claims at a lower dividend than proposed for payment to other unsecured creditors.

This Court is vested with jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

The facts involved in this matter are not in dispute. Debtors proposed an amended Chapter 13 plan of reorganization on October 29, 1998, proposing to pay a dividend of 15% to unsecured creditors whose claims are proven and allowed, except for certain claims held by Noland. Debtors proposed to pay the Noland claims a dividend of 1% of the proven and allowed amount of such claims. Noland objected to Debtors' plan, arguing that all unsecured claims should be paid the same dividend, and that the plan unfairly discriminated against Noland.

Cornerstone Liquidation Company ("Cornerstone"), as well as Douglas Burnip individually, invested money in National Liquidators, Inc. ("NLI"), and received certain payments from those investments representing either return of principal or profits. In addition, Douglas Burnip allegedly acted as a broker of investments, or interests in NLI, and received commissions for selling such interests, either directly from NLI, or filtered through Cornerstone. Noland filed adversary actions alleging that NLI related payments received by Cornerstone and Burnip constituted preferences or fraudulent transfers, recoverable by Noland as trustee of the estate of NLI.

In his objection to confirmation of Debtors' Chapter 13 Plan, Noland states that the dispute has been narrowed by agreement. The parties have agreed that Noland's claim in connection with Mr. Burnip's individual investments in NLI is in the amount of $33,000.00, and will be paid a 15% dividend. Further, to the extent Noland obtains judgment against Cornerstone that Cornerstone is unable to pay, Noland agrees to accept the 1% dividend with respect to the Cornerstone judgment. Noland advises the Court that the dispute between the parties is limited to his claim for recovery of commissions that Mr. Burnip received for soliciting new investors of NLI. Debtors propose to pay a 1% dividend for claims arising from Mr. Burnip's receipt of such commissions, and Noland argues that he is entitled to receive the same 15% dividend to be paid to other unsecured creditors.

This Court has not been requested, nor is it in a position to determine the existence or amount of Mr. Burnip's liability for soliciting investors in NLI, and receipt of commissions. However, assuming that Noland has an allowable claim arising from Mr. Burnip's receipt of such commissions, the Court is in a position to determine the validity of Debtors' separate classification of such claims. Noland's agreement to accept 1% for claims arising against Mr. Burnip by virtue of his ownership interest in Cornerstone, not including claims for recovery of commissions, is not relevant to the Court's determination.

11 U.S.C. § 1322(a)(3) states that "if the plan classifies claims, [the plan shall] provide the same treatment for each claim within a particular class." In the Amended Plan, the claims of Noland are separately classified from general unsecured claims, and pursuant to the stipulation reached by the parties, there have now effectively been further "subclassifications" of any Cornerstone deficiency claim, and commissions received by Mr. Burnip that are subject to an allowable claim of Noland. Based on the agreement reached by the parties, the Court will not make a ruling on the basis that all claims subject to the 1% distribution are in a single class, and must receive the same treatment pursuant to 11 U.S.C. § 1322(a)(3).

The agreement of the parties requires the Court to view Debtors' Amended Plan as providing for three separate classifications for unsecured creditors. First, general unsecured creditors unrelated to Mr. Burnip's involvement with NLI, and the $33,000.00 claim of Noland in connection with Mr. Burnip's recovery of his individual investments in NLI will receive a 15% dividend. In the second "effective" class, to the extent Noland obtains a judgment against Cornerstone that Cornerstone is unable to pay, Noland will accept payment from Debtors in the amount of 1% of the allowed amount of that claim. The third "effective" class, representing Noland's claim for commissions received by Mr. Burnip for soliciting new NLI investments, is subject to a disputed proposal to pay a 1% dividend.

In accordance with 11 U.S.C. § 1322(b)(1), this Court must determine whether payment of 1% to the "third effective class" constitutes unfair discrimination. Debtors argue that the proposed discrimination is reasonable based on the fact that this third class represents claims that are unliquidated, disputed, contingent business debts with co-obligors.[1]

Debtors' arguments for discriminatory treatment of this third class of unsecured claims have been analyzed and refuted by courts and commentators alike. While separate classification of partnership or other contingent and unliquidated debt may be allowable, discriminatory treatment is not necessarily a reasonable result of that separate classification. As stated above, the Court is not in a position to determine whether Debtors have any liability to Noland, or any other entities, on account of the alleged "commissions." However, if a determination is made that Noland has an allowable claim for recovery of the commissions, that claim is entitled to be paid the same dividend as proposed for all general unsecured creditors regardless of whether the claim arises directly from Mr. Burnip, or derivatively through Cornerstone.

■■■ "The liability of an individual partner for the debts of a partnership should be

'contingent' for Chapter 13 eligibility purposes without regard to the definition of 'contingent' one uses." 1 Keith M. Lundin, *Chapter 13 Bankruptcy*, § 1.68, p. 1–68 (2d ed.1994). Once separately classified, as has occurred in Debtors' Amended Plan, the Court must determine whether the treatment of the separate class "discriminates unfairly", and is therefore violative of 11 U.S.C. § 1322(b)(1). The burden is on the plan proponent to prove that the proposed classification does not discriminate unfairly. *In re Brigance*, 219 B.R. 486, 494 (Bankr. W.D.Tenn.1998). The Court does not find that Debtors have met their burden of proving the fairness of their discriminatory treatment of the third class of unsecured claims. The Court finds that the unliquidated and contingent nature of claims, while possibly providing a reasonable basis for delay in payments, or payments subject to the satisfaction of a condition precedent, do not provide a reasonable basis for discriminatory treatment. *In re Riggel*, 142 B.R. 199, 205 (Bankr.S.D.Ohio 1992). *See also*, 2 Keith M. Lundin, *Chapter 13 Bankruptcy*, § 4.78, p. 4–175 (2d ed.1994).

■■■ Mr. Burnip's liability as a partner of Cornerstone would be analogous to having co-obligors (i.e., the other partners) for the relevant obligation. This factor would support the contingent nature of the partnership claim, but in the event of default by the partnership, the remaining claim would be entitled to receive identical treatment as proposed for other unsecured creditors. Section 1322(b)(1) does not allow for less favorable treatment of co-signed claims, although more favorable treatment may be permissible. *In re Diaz*, 97 B.R. 903, 904 (Bankr.S.D.Ohio 1989). The fact that the third class of unsecured claims may be business oriented does not support less favorable treatment than proposed to consumer oriented unsecured claims. *In re Harris*, 62 B.R. 391 (Bankr. E.D.Mich.1986) (It is unfair discrimination for debtor to pay 100% of consumer debts and 5% of business debts, such distinction being considered arbitrary); *In re Baker*, 66

---

1. The claims with co-obligors appear to have been limited to the Cornerstone deficiency claim, and are resolved by agreement. There is no indication that the commission related claims have co-obligors.

B.R. 253 (Bankr.N.D.Miss.1986) (It is unfair to discriminate against business creditors by proposing less favorable treatment than proposed to other unsecured claim holders).

Debtors have not provided the Court with a reasonable basis for paying their business related claims less than other unsecured creditors. Merely acknowledging a distinction between consumer and business claims does not support discriminatory treatment. The commission related claims are also unliquidated, contingent, and disputed obligations. However, none of these factors support discriminatory treatment under the circumstances of this case. Based on the conclusion that the proposed treatment of Noland's commission related claims constitutes unfair discrimination, contrary to 11 U.S.C. § 1322(b)(1), the Court hereby sustains Noland's objection to confirmation of Debtors' Amended Chapter 13 Plan. Debtors are hereby provided with a period of twenty (20) days to file an amendment to their plan that complies with the terms of this Order, otherwise this case will be dismissed.

IT IS SO ORDERED.