**In re Darlene M. ROSENTHAL, Debtor.**

**Bankruptcy No. 97–80812.**

United States Bankruptcy Court, C.D. Illinois.

May 6, 1999.

Mark A. Vandewiele, East Moline, IL, for Employees Credit Union of Rock Island.

Michael A. Williams, Rock Island, IL, for Darlene M. Rosenthal.

Richard A. Bowers, Rock Island, IL, trustee.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

Prior to the Debtor, Darlene M. Rosenthal, (DEBTOR) filing her Chapter 13 case in Bankruptcy, she entered into two co-signed loan transactions with the Rock Island Employees Credit Union (CREDITOR), one of which was co-signed by John Millwood (MILLWOOD). The DEBTOR then filed a Chapter 13 case in Bankruptcy. The order confirming the DEBTOR's

modified Chapter 13 plan provided that one co-signed loan was to be repaid through the plan with the MILLWOOD co-signed loan to be paid directly by MILLWOOD. The CREDITOR filed a claim for the co-signed loan being paid through the plan, but not for the co-signed loan being repaid by MILLWOOD.

MILLWOOD made some payments and then filed his own Chapter 7 case in Bankruptcy, scheduling as a debt the loan he co-signed and receiving a discharge from it. After the claim date had passed in the DEBTOR's Chapter 13 case, the CREDITOR filed a proof of claim for the loan co-signed by MILLWOOD. The Chapter 13 Trustee objected to it as being late filed. The CREDITOR filed an answer asking that its claim be allowed or in the alternative that the plan be modified or dismissed.

As to its first position, the CREDITOR relies on § 502(e)(2) and § 1305(a)(2) of the Bankruptcy Code, 11 U.S.C. § 502(e)(2) and § 1305(a)(2).

■ The CREDITOR's reliance on § 502(e)(2) is misplaced. Section 502(e) provides as follows:

(1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—
\*\*\*
(2) A claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of filing of the petition.

Section 502 governs the claim of a co-signer, in this case MILLWOOD. It allows the co-signer to file a claim, so that the co-signer can get paid through the plan for payments to be made by the co-signer.

To be eligible to be paid, the co-signer must file a proof of claim before the claim date. That section has no application to or confers no rights on a creditor holding the co-signed obligation.

■ Nor does the CREDITOR fair any better under § 1305(a)(2), which provides as follows:

(a) A proof of claim my be filed by any entity that holds a claim against the debtor—
\*\*\*
(2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan. . . .

That section is applicable to claims that arise postpetition. In this case, the CREDITOR's claim against the DEBTOR arose prepetition. The fact that there was a co-signer who paid and then defaulted postpetition does not change the nature of the CREDITOR's claim against the DEBTOR.

In the alternative, the CREDITOR seeks to have the Chapter 13 plan modified or the case dismissed. Modification of a confirmed plan is governed by § 1329 of the Bankruptcy Code, 11 U.S.C. § 1329, which provides in part as follows:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any pay-

ment of such claim other than the plan.

■ There are two reasons why the CREDITOR does not fall within the scope of § 1329(a). First, the CREDITOR is not the type of entity that can request a modification. As it holds a co-signed obligation, it is a secured creditor and only a debtor, the Trustee, or the holder of an unsecured claim can seek modification. Second, even if it were not a secured creditor,[1] modification must be for a class and not a single unsecured creditor.

■ The CREDITOR also seek dismissal under § 1307(c)(6) of the Bankruptcy Code, 11 U.S.C. § 1307(c)(6), on the grounds that MILLWOOD's failure to pay is a material default under the DEBTOR's plan. Section 1307(c)(6) provides as follows:

(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—
***
(6) material default by the debtor with respect to a term of a confirmed plan. . . .

That section does not help the CREDITOR, as there was no default by the DEBTOR. Under the confirmed plan, MILLWOOD was to pay the CREDITOR. It was MILLWOOD who defaulted. The CREDITOR's reliance on *In re Garcia,* 42 B.R. 33 (Bkrtcy.D.Colo.1984), is also misplaced. In that case it was the debtor who was to pay outside the plan and defaulted. In the case before this Court, as was previously noted, it was MILLWOOD and not the DEBTOR who failed to pay.

The CREDITOR here could have protected itself by filing a claim for the MILLWOOD co-signed loan and objecting to confirmation on the grounds that it was entitled to look to the DEBTOR for payment[2]. Having failed to do so, it is now

---

**1.** It could be argued that as to the MILLWOOD co-signed loan, the CREDITOR is now unsecured, as MILLWOOD has taken bankruptcy and discharged his obligation to the CREDITOR. However, at the time of the DEBTOR's bankruptcy filing and confirmation of her plan the CREDITOR held the co-signature of MILLWOOD and was secured.

**2.** Section 1322(b)(1) of the Bankruptcy Code, 11 U.S.C. § 1322(b)(1), dealing with plan treatment of a co-signed loan provides as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—
(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated, however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims. . . .
The cases hold that § 1322(b)(1) is a one-way street. In *In re Markham,* 224 B.R. 599 (Bkrtcy.W.D.Ky.1998), the debtor proposed to pay only 15% of the unsecured deficiency on a co-signed loan while paying 70% to all other unsecured claimants. The debtor had co-

signed a loan to his brother enabling him to purchase a vehicle. After the brother defaulted, the creditor repossessed the vehicle and sold it. Denying confirmation on the ground that the plan unfairly discriminated against the creditor by treating a co-signed claim that was in default less favorably that other unsecured claims, the court stated:

While § 1322(b)(1) has been construed as permitting debtors to pay a co-signed claim at a *higher* composition than other unsecured claims, a number of courts have held that this section does not permit debtors to pay such claims at a *lower* composition. *In re Diaz,* 97 B.R. 903 (Bankr.S.D.Ohio 1989); *In re Davis,* 101 B.R. 505, 507 (Bankr.S.D.Ohio 1989); *In re Dondero,* 58 B.R. 847, 848 (Bankr.D.Or.1986); *In re Perkins,* 55 B.R. 422 (Bankr.N.D.Okla.1985).
The legislative history of § 1322(b)(1) supports this interpretation. *See In re Gonzales,* 172 B.R. 320, 329 (E.D.Wash.1994); *Dondero,* 58 B.R. at 848; *In re Dornon,* 103 B.R. 61, 63 (Bankr.N.D.N.Y.1989). While there are no theoretical differences between co-debtor claims and other claims, there are practical differences that must be recognized. These practical differences are rooted in the fact that co-debtors are often

too late. In *In re Fowler*, 1998 WL 748643 (Bankr.E.D.Va.1998), the creditor sought to compel the debtor to modify her confirmed Chapter 13 plan to include its unsecured deficiency claim, arising from the cosigner's failure to make payments and repossession of the collateral. The debtor's plan provided that the creditor's claim would be paid outside the plan by the cosigner. The creditor timely filed a claim asserting that its claim was fully secured. After confirmation of the plan, the cosigner defaulted and the creditor was granted relief from the stay to repossess the vehicle and sell it. After the sale, the creditor filed an amended proof of claim asserting a general unsecured claim, and a pleading seeking payment under the debtor's plan. The court held that the confirmation order was res judicata as to the rights and liabilities of the parties, and noted:

> [T]he court observes that this is not a situation in which payment of a secured creditor's claim was being made, in whole or in part, through the plan, or by the debtor outside the plan, and in which the issue is merely one of adjusting the claim to take account of a post-confirmation change of circumstances. Rather,

> relatives or friends of the debtor. Consequently, the debtor may feel a great personal pressure to pay the debt in full to protect those friends or relatives, despite the fact that payment of the claim in full is not permitted in the Chapter 13 Plan. Thus, if the debtor is required to devote all disposable income to the plan, the conflicting desire to make voluntary payments outside of the plan on the co-signed debt may spell failure for the plan by leaving insufficient income to keep up with plan payments. 5 *Collier on Bankruptcy*, ¶ 1322.05(1) (15th Ed.1994); S.Rec. No. 9th Cong. 1st Sess. 17–18, 1983. Accordingly, to deal with the practicalities of this type of situation, § 1322(b)(1) permits the debtor to separately classify co-signed debts in the context of the debtor's Chapter 13 Plan.
>
> Thus, while the purposes and intent underlying § 1322(b)(1) support an interpretation that the language of that section permits co-signed claims to be treated more favorably than other unsecured claims, they do not support a finding that a less favorable treatment of co-signed claims is permissible.

the plan not only provided for no payments to [the creditor] through the plan, the plan did not even obligate the debtor to make direct payments outside the plan. Instead, the plan expressly stated that the creditor would have to look to a third party for payment. That such treatment might have been successfully objected to is beside the point. The plain fact is that [the creditor] did not object to the plan's treatment of its claim. At this point, this court need not decide whether the provision was objectionable, because the creditor's objection has been brought long after the order confirming the plan has become final. *See Klus*, 173 B.R. at 56 (noting that a final order cannot be disturbed even if the confirmation order was in conflict with then existing law). By failing to object to confirmation of the plan, [the creditor] waived any objections it may have been able to raise to the treatment of its claim. Because the plan required [the creditor] to look to the co-owner of the car for payment, [the creditor] cannot now look to the debtor for payment of its deficiency claim but must seek recovery, if at all, from the co-debtor.

In addition, there is yet an even more practical reason for rejecting the interpretation advanced by the Debtor that § 1322(b)(1) permits less favorable treatment of co-signed claims. The Bankruptcy Code simply does not provide either the Court or the Trustee with a mechanism for insuring that the nondebtor co-signer will actually pay the obligation. The Debtor takes the position that the obligation will be paid by the co-signer, a third party. That assumption is the basis for the Debtor's argument that the Plan may provide for a lower percentage of payments of the co-signed debt. However, because the nondebtor co-signer is not within the Court's jurisdiction, the Court has no authority to assure that the nondebtor co-signer actually makes such payments, thereby satisfying the creditor's claim. *See Diaz*, 97 B.R. at 905; *see also Dondero*, 58 B.R. at 849. Thus, without a mechanism insuring that the co-signer will pay the obligation, the creditor possessing the co-signed claim is placed in a more precarious position than other creditors.

Disallowing the CREDITOR's claim does not lead to a harsh or unfair result. As previously indicated, the CREDITOR could have protected itself against what occurred. However, no doubt, the CREDITOR made a judgment when it got the Chapter 13 plan that it felt would maximize its recovery on both co-signed loans. That judgment proved to be erroneous. It is now too late to reconsider and change its mind.

This Opinion is to serve as findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons stated in an Opinion filed this day, IT IS HEREBY ORDERED that:

1. The objection by the Chapter 13 Trustee to Claim No. 19 is hereby SUSTAINED and the Claim is DENIED;

2. The motion filed by the CREDITOR to amend the plan is DENIED; and

3. The motion filed by the CREDITOR to dismiss the case is DENIED.