**In re James A. WALLACE, Jr., Judith A. Wallace, Debtors.**

No. 00–32679.

United States Bankruptcy Court, E.D. Tennessee.

March 6, 2001.

Richard M. Mayer, Knoxville, TN, for debtors.

Thomas H. Dickenson, Amy V. Hollars, Hodges, Doughty & Carson, Knoxville, TN, for Knoxville TVA Employees Credit Union.

Gwendolyn M. Kerney, Knoxville, TN, Chapter 13 Trustee.

## MEMORANDUM ON MOTION TO DISMISS

RICHARD STAIR, Jr., Bankruptcy Judge.

Before the court is the Motion filed by Knoxville TVA Employees Credit Union (Credit Union) on January 9, 2001. The Motion seeks dismissal of the Debtors' case due to the failure of the Debtors' daughter to make payments on a 1996 Geo Metro outside the Debtors' Chapter 13 Plan. All facts essential to the court's resolution of this contested matter have been stipulated pursuant to a written Stipulation of Facts filed by the parties at the February 28, 2001 hearing on the Motion. The Debtors and Credit Union have each briefed their respective positions.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(L), (O) (West 1993).

## I

This case was commenced by the filing of the Debtors' Chapter 13 petition on July 10, 2000. The Debtors scheduled a $4,860.00 claim owing the Credit Union resulting from a note and security agree-ment dated May 11, 2000, through which the Debtors borrowed $5,019.66. By the terms of the note and security agreement, the Debtors granted the Credit Union a security interest in their 1996 Geo Metro. The Credit Union properly perfected its lien.

The Debtors' Chapter 13 Plan provides that the Credit Union debt will be paid outside the plan by the Debtors' daughter, who was not a party to the original loan. The Credit Union agreed to its treatment under the Plan, and the Plan was confirmed on September 6, 2000, without objection.

Since confirmation, the Geo Metro has experienced "major mechanical problems" and has been wrecked.[1] The Credit Union has not received a payment on its debt since September 18, 2000. Pursuant to an Agreed Order entered on November 1, 2000, the Debtors surrendered the Geo Metro to the Credit Union, which then sold the car for $500.00. A balance of $4,401.22 remains on the debt, excluding interest and attorneys' fees.

## II

■ By its Motion, the Credit Union seeks dismissal of the Debtors' case pursuant to § 1329 of the Bankruptcy Code, asserting that a *de facto* modification of the Debtors' Chapter 13 Plan has occurred. Section 1329 provides guidelines for plan modification upon request of certain parties in interest. *See* 11 U.S.C.A. § 1329 (West 1993). However, this section does not provide for dismissal of bankruptcy cases. *See id.* Dismissals are instead governed by § 1307 of the Bankruptcy Code. In its brief, the Credit Union correctly cites § 1307 and asserts that "the debtors' *de facto* modification of their confirmed Chapter 13 plan represents suffi-

---

1. The Credit Union does not contend that the Debtors or their daughter caused any inten-tional damage to the vehicle.

cient cause under § 1307(c) for dismissal of the debtors['] Chapter 13 case."

Section 1307(c) provides that:

[O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause[.]

11 U.S.C.A. § 1307(c) (1993).

Section 1307(c) provides ten non-exclusive examples of "cause" for dismissal or conversion. Of these examples, only § 1307(c)(6), which allows conversion or dismissal for a "material default by the debtor with respect to a term of a confirmed plan," has arguable application to the present case. However, the bankruptcy court for the Central District of Illinois has held that a co-signer's default on payments scheduled outside a Chapter 13 plan is not a "default by the debtor" as contemplated by § 1307(c)(6). *See In re Rosenthal,* 233 B.R. 815, 818 (Bankr.C.D.Ill. 1999).

The Credit Union's primary argument for dismissal is its assertion that the Debtors' *"de facto* plan modification" offends § 1329, thereby constituting "cause" for dismissal. Section 1329 provides in material part:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any pay-

ment of such claim other than under the plan.

11 U.S.C.A. § 1329(a) (1993).

The Credit Union points out that the Sixth Circuit has held:

[A] debtor cannot modify a plan under section 1329(a) by: 1) surrendering the collateral to a creditor; 2) having the creditor sell the collateral and apply the proceeds toward the claim; and 3) having any deficiency classified as an unsecured claim. Section 1329(a) only permits modification of the *amount* and *timing* of *payments,* not the total *amount* of the *claim.*

*Chrysler Fin. Corp. v. Nolan (In re Nolan),* 232 F.3d 528, 535 (6th Cir.2000) (emphasis in original) (internal citation omitted). Debtors should "not be permitted a de facto modification without complying with the requirements of § 1329." *In re Lynch,* 109 B.R. 792, 795 (Bankr. W.D.Tenn.1989). Compliance with § 1329 includes "the filing of a proper motion for modification, which motion must be noticed to *all* scheduled creditors or at the very least, all creditors holding allowed claims in the confirmed Chapter 13 plan." *Id.*

The Credit Union states that cause for dismissal exists because the Debtors should not be allowed a *de facto* modification of the claim by failing to continue payments on the now unsecured Geo Metro debt. The Credit Union contends that such modification violates *Nolan* and thus would not be permitted even by means of a properly filed and noticed motion.

Judge Mitchell of the bankruptcy court for the Eastern District of Virginia, in deciding a similar case, has stated:

Turning to the present case, the court observes that this is not a situation in which payment of a secured creditor's claim was being made, in whole or in part, through the plan, or by the debtor outside the plan, and in which the issue is merely one of adjusting the claim to take account of a post-confirmation change of circumstances. Rather, the

plan not only provided for no payments to [the creditor] *through* the plan, the plan did not even obligate *the debtor* to make direct payments *outside* the plan. Instead, the plan expressly stated that the creditor would have to look to a third party for payment. That such treatment might have been successfully objected to is beside the point. The plain fact is that [the creditor] did not object to the plan's treatment of its claim. At this point, this court need not decide whether the provision was objectionable, because the creditor's objection has been brought long after the order confirming the plan has become final. By failing to object to confirmation of the plan, [the creditor] waived any objections it may have been able to raise to the treatment of its claim. Because the plan required [the creditor] to look to the co-owner of the car for payment, [the creditor] cannot now look to the debtor for payment of its deficiency claim but must seek recovery, if at all, from the co-debtor.

*In re Fowler,* No. 96–15386–SSM, 1998 WL 748643, at *5 (Bankr.E.D.Va. Oct. 27, 1998) (internal citation omitted); *cf. In re Ramirez–Arellano,* 113 B.R. 796, 797 (Bankr.S.D.Fla.1990) (Section 1329(a) does not control situations where payments to the creditor "were at all time outside the plan."). *But cf. In re Bellinger,* 179 B.R. 220, 226 (Bankr.D.Idaho 1995) (Section 1329(a) does control situations where "although payments are to be made outside the plan, the ... payments are provided for by the plan, i.e. the plan provides they will be made outside the plan.").

 In the present case, the Credit Union acquiesced in the Chapter 13 Plan releasing the Debtors' liability on the note. The Credit Union agreed to look to a third party for payment.[2] "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C.A. § 1327(a) (West 1993); *see also Cline v. Welch (In re Welch),* No. 97–5080, 1998 WL 773999, at *2 (6th Cir. Oct. 11, 1998).

 Creditors are bound by the terms of a confirmed plan unless the plan is abandoned by the debtor. *See In re Pearson,* 214 B.R. 156, 160 (Bankr.N.D.Ohio 1997). The *"de facto* modification" asserted by the Credit Union does not involve conduct of the Debtors. Clearly, a third party has failed to comply with the plan's provisions. That third party's breach, however, cannot be considered a plan modification by the Debtors where the Credit Union freely released the Debtors from any further liability on this debt.

The court accordingly finds insufficient cause for dismissal of the Debtors' case. The Credit Union's Motion is denied. An order consistent with this memorandum will be entered.

---

2. That the Credit Union was fully aware of the provisions of the Debtors' plan prior to confirmation and agreed to be paid by the daughter is evidenced by an Agreed Order entered on August 16, 2000, prior to confirmation. By the Agreed Order, the Credit Union obtained modification of the automatic stay "to conduct normal servicing activities related to its indebtedness" and acknowledged that the Geo Metro was to be paid "outside the provisions of [the Debtors'] plan by their daughter."