| Date | BOY Bal | Int. Rate | Yrly. Int. | EOY Bal |
|---|---|---|---|---|
| Pro-rated per diem 12–30 to 12–31–88: | | | $ 50 | $ 99,101 |
| 01–Jan–90 | $ 99,101 | 9.20% | $ 9,117 | $108,219 |
| 01–Jan–91 | $108,219 | 9.20% | $ 9,956 | $118,175 |
| 01–Jan–92 | $118,175 | 9.20% | $10,872 | $129,047 |
| 01–Jan–93 | $129,047 | 9.20% | $11,872 | $140,919 |
| 01–Jan–94 | $140,919 | 9.20% | $12,965 | $153,884 |
| Pro-rated per diem 1-1-95 to 9-20-95: | | | $10,200 | $164,084 |

Total Post–Judgment Interest: $ 65,033
+ $ 99,051 (Principal and pre-judgment interest)
$164,084 Total Compensatory Damage Award with accrued interest

**In re Sandra FARMER, Debtor.**

**Bankruptcy No. 94–11819.**

United States Bankruptcy Court,
D. Rhode Island.

Sept. 25, 1995.

Matthew J. Lewiss, Lewiss & Bauerle, Westerly, RI, for debtor.

John Boyajian, Chapter 13 Trustee, Boyajian, Harrington & Richardson, Providence, RI.

## ORDER DENYING CHAPTER 13 CONFIRMATION

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on August 17, 1995, on confirmation of Debtor's Chapter 13 plan. The Debtor is employed as a wait person/bartender/housekeeper, and has gross monthly earnings of at least [1] $2,380. According to her own figures, the Debtor has net disposable income of $209 per month, and proposes to pay $200 per month into the plan for the first two years and $400 per month for three years thereafter. All priority claims and the $18,000 mortgage arrearage on the Debtor's home will be paid in full. Unsecured creditors will receive nothing.

The Debtor points out that the largest unsecured creditor, Washington Trust Company,[2] does not object to the plan and urges that confirmation should be granted for that reason. The Chapter 13 Trustee states that this would be a no asset Chapter 7 case, and does not object to confirmation. Based upon the facts in this case, we must disagree with the Debtor, the Chapter 13 Trustee, and the major creditor in the case, and conclude that the plan as proposed is unconfirmable.

Notwithstanding the absence of any objection to confirmation, the Court has an independent duty to determine that the plan meets all Code requirements. *See* 11 U.S.C. § 1325(a)(1); *In re Jewell,* 75 B.R. 318, 319 (Bankr.S.D.Ohio 1987). One essential prerequisite to confirmation is that the plan be proposed in "good faith and not by any

---

1. The Debtor's earnings consist largely of cash tips and wages. We assume that she has not overstated her income.

2. The total unsecured claims are approximately $4,000 and Washington Trust is owed $3,000 of that amount.

means forbidden by law." 11 U.S.C. § 1325(a)(3). A number of factors are relevant in determining whether this requirement has been met, including:

> "the terms of the Chapter 13 plan including the dividend offered to creditors, whether the plan represents a sincerely intended commitment to pay back creditors; and whether the financial status of the debtors justifies the special protection offered by the provisions of Chapter 13."

*In re Jewell*, 75 B.R. at 319–20 (quoting *In re Breckenridge*, 12 B.R. 159, 160 (Bankr. S.D.Ohio 1980)).

 Providing creditors with a dividend equal to what they would receive in a Chapter 7 liquidation is not per se satisfaction of the good faith requirement, nor is the offer of a really small dividend tantamount to bad faith, per se. *See Jewell*, 75 B.R. at 320. Proposing a very low dividend, however, "subjects the plan provisions to greater scrutiny on those issues." *Id.* (citation omitted).

 As a matter of policy, however, the proponent of a zero dividend plan assumes the heavy burden of showing that the offer does not contradict the intent and purpose of Chapter 13. The legislative history to the Bankruptcy Reform Act of 1978 states in part that:

> The purpose of chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his[/her] debts over an extended period. In some cases, the plan will call for full repayment. In others, it may offer creditors a percentage of their claims in full settlement. . . .

> The benefit to the debtor of developing a plan of repayment under chapter 13, rather than opting for liquidation under chapter 7, is that it permits the debtor to protect his[/her] assets. . . . Under chapter 13, the debtor may retain his[/her] property by agreeing to repay his[/her] creditors. . . . The benefit to the creditors is self-evident: their losses will be significantly less than if their debtors opt for straight bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 118, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6079.

 To keep her house, this Debtor proposes to increase her plan payments in years three, four, and five by one-hundred percent. In her list of expenses, Schedule J, she includes a monthly expense of "Other $150." Vis-a-vis the good faith requirement, this unexplained item creates a serious problem for the Debtor, in light of her decision to pay nothing to unsecured creditors. With unsecured debts totaling $4,000, all creditors could be paid in full, in less than three years, if just this one vague monthly expense item was committed to the plan. In the absence of any guidelines or standards as to what Congress meant by the language "proposed in good faith, and not by any means forbidden by law," these low or no dividend cases are all, of necessity, fact-specific. On the facts before us, this Debtor has not met the good faith test. We therefore conclude that the plan as proposed does not meet the minimum requirements of 11 U.S.C. § 1325(a)(3), and accordingly, confirmation is DENIED. *See In re Saglio*, 153 B.R. 4, 5–6 (Bankr. D.R.I.1993).

 As guidance, while we are not announcing herein a per se rule denying confirmation of zero, or close to zero percent Chapter 13 plans, such proposals will receive very close scrutiny, even in the absence of any formal objection.

Enter Judgment consistent with this opinion.