**In re Benny HILL, Jr., and Tammy Hill, Debtors.**

**No. 00–70694–TLH4.**

United States Bankruptcy Court, N.D. Florida, Tallahassee Division.

April 12, 2001.

**496**

Allen Turnage, Tallahassee, FL, for debtor.

Leigh D. Hart, Tallahassee, FL, trustee.

### MEMORANDUM OPINION AND ORDER ON CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION OF AMENDED CHAPTER 13 PLAN

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER is before the Court on confirmation of Debtors Benny, Jr. and Tammy Hill's Amended Chapter 13 Plan, and Chapter 13 Trustee Leigh Hart's objection thereto. At issue is the Debtors' proposal to pay a co-signed unsecured debt at 100% while paying nothing to the other unsecured creditors. The Court has jurisdiction over this core proceeding via 28 U.S.C. §§ 151, 157(b)(2)(L), and 1334.

The Debtors filed their Chapter 13 petition and initial Chapter 13 Plan on September 19, 2001. The Debtors' Amended Chapter 13 Plan, now before the Court for confirmation, proposes to fully pay the claim of Flag Federal Credit Union in the amount of $4,000.00 while paying nothing on the $44,000.00 owing to the remaining general unsecured creditors. Flag Federal's claim relates to a signature loan that was co-signed by Benny Hill, Sr., the Debtor's father.

The Trustee contested the disparate classification and treatment issues at the initial confirmation hearing of February 8, 2001. No evidence was taken at the initial hearing. The parties subsequently briefed the issues. This Memorandum Opinion and Order shall guide the parties in their preparation for the continued confirmation hearing in this case.

Bankruptcy Code section 1322(b)(1) states that the plan may

designate a class or classes or unsecured claims ... but may not discriminate unfairly against any class so designated; *however,* (emphasis added) such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.

11 U.S.C. § 1322(b)(1). The *however* clause was added in the 1984 amendments to the Bankruptcy Code. There is a split of authority as to whether the clause beginning with *however* eliminates the prohibition against unfairly discriminatory designations when the debt in question is a co-signed consumer debt.

Stated plainly, the statute says that Chapter 13 debtors may create separate classifications for classes of unsecured claims, but may not unfairly discriminate against any designated class. However, the plan may treat co-signed consumer debt differently than other unsecured claims. The question is whether allowing different treatment means allowing discriminatory treatment. The so-called "carve-out" of co-signed consumer debt from the prohibition against unfairly discriminating between classes of creditors has been the subject of wide debate. The reported decisions display a broad spectrum with respect to just how far a Chapter 13 plan can go to protect a co-signer while paying a lesser pro-rata share, or no share at all, to other unsecured creditors.

Some courts hold that the *however* clause eliminates the prohibition against

unfair discrimination when co-signed consumer debt is favored. *See e.g. In re Hill,* 255 B.R. 579 (Bankr.N.D.Cal.2000). Courts following this line find that almost all discrimination between classes of creditors is inherently unfair, even when the designation is made to ensure payment of mandated debts such as child support or student loans. *In re Sperna,* 173 B.R. 654 (9th Cir. BAP 1994); *In re Burns,* 216 B.R. 945 (Bankr.S.D.Cal.1998). These courts still require a plan to be proposed in good faith. *In re Hill* at 580–81.

Other courts hold that the *however* clause, while permitting different treatment for co-signed consumer debt as compared to other unsecured debt, does not eliminate the prohibition against unfair discrimination between the classes. *See, e.g. In re Chacon,* 202 F.3d 725 (5th Cir. 1999). Courts following this line find unfair discrimination if the disparate treatment doesn't rationally further a legitimate interest of the debtor, or if the plan disproportionately benefits or creates a windfall for the co-signer. *Id.* at 726.

Here, the Debtors contend that the carve-out provision of 11 U.S.C. § 1322(b)(1) allows for the designation and payment of the co-debtor claim as called for in the amended plan, regardless of whether the proposed treatment unfairly discriminates against other claimants. The Trustee argues that the disparate treatment of the creditors must be rationally related to the Debtor's rehabilitation, be proposed in good faith, and meet the liquidation test, or the amended plan cannot be confirmed.

The Debtors rely on *In re Dornon,* 103 B.R. 61 (Bankr.N.D.N.Y.1989) for the proposition that 1984 amendment constitutes a "carve-out" to the "unfair discrimination" standard. The Debtors also cite to the "clear language of the statute" in suggesting that 5th Circuit, in *In re Chacon,*

allowed discrimination in favor of co-signed consumer debts as an overarching principle. The Trustee argues that the majority of courts consider the impact of a carve-out on the other unsecured creditors. She cites to *In re Applegarth,* 221 B.R. 914 (Bankr.M.D.Fla.1998) for the proposition that section 1322(b)(1) does not allow a debtor to separately classify a co-signed debt while unfairly discriminating against other creditors. She contends that the legislative history shows that Congress chose not to exempt the co-debtor class from the unfair discrimination test. *Id.* at 915.

While it is clear that there are two sides to the application of the unfair discrimination test to separately classified co-debtor obligations, the distinction is less important when section 1322 is read in connection with section 1325. The relevant sections of 11 U.S.C. § 1325(a) call for confirmation of a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under [C]hapter 7 of this title on such date;

11 U.S.C. § 1325(a).

Thus, a Chapter 13 plan will be confirmed if it complies with the other provisions of Chapter 13, is proposed in good faith, and meets the liquidation test, regardless of the proposed disparate treatment between co-signed debt and other unsecured creditors. The Debtors infer

that their amended plan meets the other provisions of Chapter 13 because of a presumption of good faith inuring to the carve-out; they do not cite any authority supporting that assertion. On the contrary, the majority of courts require a debtor to *show* good faith in all aspects of his plan.[1]

■ The Debtors' brief implies that the Court is without discretion regarding the carve-out. In the Eleventh Circuit, the "good faith requirement is . . . an expansive confirmation criteria which preserves in every case the discretion of . . . [a] Court to insure that result of the confirmation of a Chapter 13 plan is in conformity with Congressional intent and not an abuse of the system." *In re Thompson,* 191 B.R. 967, 975 (Bankr.S.D.Ga.1996) *citing Kitchens v. Georgia R.R. Bank and Trust Co.,* 702 F.2d 885 (11th Cir.1983). Debtor does not cite to any Eleventh Circuit authority supporting the automatic confirmation of a Chapter 13 plan that seeks to separately classify creditors to effect a discriminatory result favoring a non-filing co-debtor. Discretion regarding the separate treatment of co-signed consumer debt and other unsecured debt is subsumed by the good faith requirement. Thus, the instant Debtors' burden includes the duty to establish the circumstances that justify the proposed treatment and the discriminatory impact of the plan.

■ An evidentiary hearing will be held to afford the Debtors the opportunity to prove their plan. The following non-exhaustive list of elements shall be used by the plan proponents to develop evidence showing that favoring the co-signed debt to the detriment of the other creditors still meets all of the requirements of a Chapter 13 plan, to wit:

a. Does the obligation fall under the plain language of § 1322(b)(1)? Is the debt a consumer debt incurred primarily for the Debtors' benefit? *In re Thompson* at 972.

b. Will the failure to separately classify the debt cause hardship to the co-debtor? Is the separate classification favoring the co-signed debt necessary to prevent the "ripple effect" of the co-debtor filing his own bankruptcy petition? *Id.* at 974; *In re Ramirez,* 204 F.3d 595, 600 (5th Cir. 2000) (*J. Benevides, specially concurring*);

c. Did the co-debtor post collateral on the debt in question? *Id.*

d. Does the proposed plan meet the liquidation test of § 1325(a)(4)? Or, would the other unsecured creditors obtain a better return from a Chapter 7 liquidation?

e. Is the Chapter 13 plan actually a liquidation with reaffirmation, specifically disfavored by Congress? *In re Thompson* at 973, 974 at note 9.

f. Do the differences in treatment rationally further a legitimate interest of the Debtors without disproportionately benefitting the co-signer? *In re McNichols (II),* 255 B.R. 857, 868 (Bankr.N.D.Ill.2000); *see also In re Chacon* at 726.

g. Is the plan presented in good faith pursuant to § 1325(a)(3) as outlined

---

1. *See In re Ramirez,* 204 F.3d 595 (5th Cir. 2000); *In re Caldwell,* 895 F.2d 1123 (6th Cir.1990); *In re Hill,* 255 B.R. 579 (Bankr. N.D.Cal.2000); *In re Williams,* 253 B.R. 220 (Bankr.W.D.Tenn.2000); *In re Burnip,* 229 B.R. 904 (Bankr.S.D.Ohio 1999); *In re Ber-* *nal,* 189 B.R. 507 (Bankr.S.D.Cal.1995); *In re Farmer,* 186 B.R. 781 (Bankr.D.R.I.1995); *In re Standfield,* 152 B.R. 528 (Bankr.N.D.Ill. 1993); *In re Sullivan,* 40 B.R. 914 (Bankr. E.D.N.Y.1984); *In re Smith,* 39 B.R. 57 (Bankr.S.D.Fla.1984).

in *In re Kitchens* at 888–89?[2]

h. The Debtors may also present other such evidence as they believe will further the confirmation of their plan.

Therefore, it is ORDERED AND ADJUDGED that the Debtors and the Chapter 13 Trustee shall attend a continued confirmation hearing, at a date and time to be set and noticed, wherein the Debtors will present evidence in support of the amended Chapter 13 Plan, in accordance with the guidance presented in this memorandum opinion.

---

**2.** While the court in *Kitchens* held the following elements to be material as to good faith, not all of the *Kitchens* elements are germane to the instant case. However, *Kitchens* serves to underscore the Eleventh Circuit's commitment to ensuring good faith in Chapter 13 plans. The elements are as follows: (1) the amount of the debtor's income from all sources; (2) the living expenses of the debtor and his dependents; (3) the amount of attorney's fees; (4) the probable or expected duration of the debtor's Chapter 13 plan; (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; (6) the debtor's degree of effort; (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expense; (9) the frequency with which the debtor has sought relief under the [Bankruptcy Code] and its predecessors; (10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors; (11) the burden which the plan's administration would place on the trustee.