**In re Jill D. HILL, Debtor.**

**Michael H. Meyer, Chapter 13 Trustee, Appellant,**

**v.**

**Jill D. Hill, Appellee.**

**BAP No. NC–01–1043–KRB.**

**Bankruptcy No. 00–11847.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Submitted July 26, 2001.

Filed Sept. 28, 2001.

**550**

Michael H. Meyer, Santa Rosa, CA, pro se.

Michael C. Fallon, Santa Rosa, CA, for Jill D. Hill, Appellee.

Steven Johnson, Office of the U.S. Trustee, San Francisco, CA, for the U.S. Trustee, Amicus Curiae.

Before: KLEIN, RUSSELL, and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

The chapter 13 trustee appeals a plan confirmation in which the bankruptcy court excused the debtor from proving that a plan classification favoring her mother over other creditors did not discriminate unfairly. The court held in a published decision, *In re Hill,* 255 B.R. 579 (Bankr. N.D.Cal.2000), that the ban on unfair discrimination in 11 U.S.C. § 1322(b)(1) never, by virtue of the so-called "however" clause, applies to discrimination in favor of consumer debts with a co-obligor.

We do not reach this interesting question because the record indicates that the § 1322(b)(1) "however" clause does not ap-

ply. There is no individual who is "liable on" the relevant debt "with the debtor" within the meaning of the § 1322(b)(1) "however" clause. This makes the bankruptcy court's ruling purely hypothetical. Moreover, an essential element of proof for plan confirmation was omitted. We VACATE and REMAND.

### Facts

Jill Hill filed a voluntary chapter 7 bankruptcy and soon converted to chapter 13, filing a plan providing for payment of $400 per month for 60 months ($24,000).

The schedules listed zero secured debt, zero priority debt, and unsecured debt totaling $57,306. Plan distributions would be to administrative expenses, any priority creditors, and unsecured creditors in two classes.

The first-class unsecured treatment was for "[o]bligations on which [debtor's mother] Betty J. Nelson is also liable: Chase ($9,147), Chase ($3,941), Discover ($5,243), Bank of America ($6,000) [which] shall be paid in full." The total first-class unsecured debt was $24,331.

The second-class unsecured treatment was for "[a]ll other unsecured creditors (IRS, Wachovia, University of Utah, Phillips) [which] shall be paid nothing." The total second-class unsecured debt was $32,975.

Nothing in the appellate record indicates how $24,000, minus expenses of chapter 13 administration, would suffice to pay unsecured debt of $24,331 "in full."

The chapter 13 trustee objected to plan confirmation, focusing upon a legal and a procedural notice issue. The legal issue was whether a debtor proposing a chapter 13 plan with separate classifications treating co-signed unsecured debt more favorably than other unsecured debt must demonstrate that the classification does not

constitute "unfair discrimination" within the meaning of § 1322(b)(1).

The chapter 13 trustee's procedural issue was whether due process considerations require written notice to creditors of the factual basis for a proposed discrimination whenever the bankruptcy court limits chapter 13 confirmation hearings to those cases in which timely objection to confirmation is filed.

The debtor's evidence supporting plan confirmation consisted of this declaration: "In my filing I scheduled obligations to Chase ($9,147), Chase ($3,941), Discover ($5,243) and Bank of America ($6,000) for debts incurred by me using Betty J. Nelson's credit cards. Betty J. Nelson is my Mother. Betty J. Nelson did not incur any of the debts scheduled by me."

The court overruled the objection. Ignoring the procedural issue, it ruled that § 1322(b)(1) "clearly exempts co-debtor debt from the fairness requirement." *Hill,* 255 B.R. at 580.

This appeal ensued.

### *Jurisdiction*

The bankruptcy court had jurisdiction per 28 U.S.C. §§ 1334 and 157(b)(2)(L). Our jurisdiction is per 28 U.S.C. § 158(a)(1).

### *Standard of Review*

■ The interpretation of § 1322(b)(1) is a question of law that we review de novo. *McDonald v. Sperna (In re Sperna),* 173 B.R. 654, 657 (9th Cir. BAP 1994).

### *Analysis*

This is a matter of statutory interpretation as to which we stumble at the threshold.

### I

The statute in question is Bankruptcy Code § 1322(b)(1), which provides that a chapter 13 plan may:

> (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; *however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims*[.]

11 U.S.C. § 1322(b)(1) (emphasis supplied).

The focus is on the emphasized "however" clause. That clause—which was added to § 1322(b)(1) in 1984—has perplexed and divided courts as to whether it obviates, or merely qualifies, the fairness requirement.

Most courts hold that separately classified co-obligor debts must still clear the § 1322(b)(1) unfair discrimination hurdle. The consequence is that the "however" clause permitting co-obligor debts to be treated "differently" is more in the nature of a qualification to the application of the unfair discrimination analysis than an exemption from it. *See, e.g., Ramirez v. Bracher (In re Ramirez),* 204 F.3d 595, 596 (5th Cir.2000); *Chacon v. Bracher (In re Chacon),* 202 F.3d 725, 726 (5th Cir. 1999); *Spokane Ry. Credit Union v. Gonzales (In re Gonzales),* 172 B.R. 320, 328–30 (E.D.Wash.1994); *In re Cheak,* 171 B.R. 55, 58 (Bankr.S.D.Ill.1994); KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY: 3D § 150.1 n. 3 (2000) (gathering cases).

A minority of courts, including the bankruptcy court in this appeal, conclude that the "however" clause excuses compliance with the § 1322(b)(1) ban on unfair discrimination. *In re Dornon,* 103 B.R. 61, 64–65 (Bankr.N.D.N.Y.1989); LUNDIN, § 150.1 n. 2 (gathering cases).

A few courts think the debate of little consequence because overreaching in favor of co-obligors can be dealt with under the good faith requirement of 11 U.S.C.

§ 1325(a)(3). *Dornon,* at 64; *In re Hill,* 261 B.R. 495, 497–98 (Bankr.N.D.Fla. 2001).

While we have not heretofore decided the narrow question of the impact of the § 1322(b)(1) "however" clause on the fairness requirement, we have consistently recognized that the section's ban on *unfair* discrimination implies that some discrimination is permissible and have applied an oft-used, but much-criticized, list of factors as pertinent to evaluating the inherently subjective question of unfairness:

> (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination ... [i.e.,] does the basis for the discrimination demand that this degree of differential treatment be imposed?

*Amfac Distrib. Corp. v. Wolff (In re Wolff),* 22 B.R. 510, 512 (9th Cir. BAP 1982); *Sperna,* 173 B.R. at 658. *But see* Stephen L. Sepinuck, *Rethinking Unfair Discrimination in Chapter 13,* 74 Am. Bankr.L.J. 341, 359 (2000) ("In the final analysis, the multifactor test really provides no guidance").

If we were to disagree with the bankruptcy court and conclude that the § 1322(b)(1) "however" clause merely informs or qualifies, rather than preempts, the fairness analysis, we would need to reverse and remand so that the trial court could decide whether the particular discrimination is unfair. We must first, however, deal with a preliminary obstacle that turns out to preclude a decision on that question of law.

## II

The threshold question is whether the § 1322(b) "however" clause applies in the first instance. On the record before us, it is apparent that the clause has not been shown to apply in this case and that the bankruptcy court incorrectly premised confirmation on a hypothetical question.

■ The § 1322(b)(1) "however" clause does not apply in a particular case unless three essential elements exist: there must be "consumer debt" that is "consumer debt of the debtor" and as to which there is "an individual [who] is liable on such consumer debt with the debtor." 11 U.S.C. § 1322(b)(1).

■ The debtor, as the chapter 13 plan proponent, has the burden of proof on all elements of plan confirmation. *Wolff,* 22 B.R. at 512.

If the debtor does not prove facts sufficient to establish the application of the § 1322(b) "however" clause, then, under any view of the law regarding the effect of that clause on the unfair discrimination ban, a chapter 13 plan that separately classifies some unsecured debts for better treatment than other unsecured debts cannot be confirmed unless the debtor proves that there is no unfair discrimination. *In re Riggel,* 142 B.R. 199, 204 (Bankr. S.D.Ohio 1992).

## A

The term "consumer debt" is statutorily defined to mean debt incurred by an individual "primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8).

■ It is settled in this circuit that the purpose for which the debt was incurred affects whether it falls within the statutory definition of "consumer debt" and that debt incurred for business ventures or other profit-seeking activities does not qualify.

*Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 913 (9th Cir.1988).

The record is silent as to the purpose of the debt. The evidence to support the existence of consumer debt is limited to some probabilistic inference from the fact that most personal credit card debt is consumer debt. Thus, the evidence to support this element is, at best, thin.

### B

Although the term "consumer debt of the debtor" is not separately defined, the language necessitates focus upon the precise liability "of the debtor."

There are two pertinent questions. First, who is the creditor? Second, what is the nature of the liability?

Here, the sole evidence of record was the debtor's declaration that there were "debts incurred by me using Betty J. Nelson's credit cards." There is no hint that the debtor herself has any contractual relationship with her mother's credit card issuers or that they even know who the debtor is.

Assuming that the debtor has an enforceable obligation, it is likely to be an obligation to reimburse her mother based on some apparently-informal agreement.

Thus, the scant record indicates that the creditor is the debtor's mother and that the nature of the obligation is reimbursement or indemnification.

### C

■ The fatal defect in this case is, however, the third essential element for invoking the § 1322(b)(1) "however" clause. There is no individual who is "liable on such consumer debt *with* the debtor." 11 U.S.C. § 1322(b)(1) (emphasis supplied).

### 1

When the phrase "liable on such consumer debt with the debtor" was added to § 1322(b)(1) in 1984, it was not conjured up out of whole cloth. Rather, it echoed a phrase that was already in Bankruptcy Code §§ 502(e), 509(a), and 1301(a).[1]

■ The plain language suggests that there be some form of shared liability. Buried within the phrase are two distinct concepts: "liable on" and "liable with." The fact that the co-obligor must be both "liable on" the debt and "liable with" the debtor, implies that the debtor and the co-obligor must both be liable to some third party.

■ The phrase "liable with" is understood to include codebtors, sureties, and guarantors. *E.g.*, H.REP. No. 95–595, at 354 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6309–10 ("codebtor, surety or guarantor"); 4 LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY ¶ 502.06[2][b] (15th ed. rev.2001) ("COLLIER").

Although discussions of chapter 13 cases typically speak of the phrase as applying to co-signers, *e.g.*, LUNDIN § 150.1, we see

---

1. Section 502(e) requires disallowance of certain claims:

   ... for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor....

   11 U.S.C. § 502(e)(1).

   Section 509(a) provides that:

   ... an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

   11 U.S.C. § 509(a).

   Section 1301 provides for a codebtor stay of any act to collect a consumer debt:

   ... from any individual that is liable on such debt with the debtor, or that secured such debt....

   11 U.S.C. § 1301(a).

no reason why the broader, well-understood meaning of the same phrase in §§ 502 and 509 should not also apply in chapter 13.

In any event, some version of shared liability is essential. *Dant & Russell, Inc. v. Burlington N. R.R. Co. (In re Dant & Russell, Inc.)*, 951 F.2d 246, 248 (9th Cir. 1991).

There is not the requisite shared liability when A is liable to B and B is liable to C but A is not liable to C. *LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 154 B.R. 416, 420 (S.D.N.Y.1993), *aff'd*, 53 F.3d 478 (2d Cir.1995); *In re Baldwin–United Corp.*, 55 B.R. 885, 890–91 (Bankr.S.D.Ohio 1985); 4 COLLIER at ¶ 502.06[2][b].

It is inescapable that the "liable with" requirement means that both the debtor and the co-obligor must be liable to some other creditor. That is the element that is missing here.

### 2

The mother's credit card debt, viewed from the perspective of the card issuers, is the debt of the mother alone. If she does not pay, they will pursue her, not the debtor. In other words, as far as the mother's creditors are concerned, the debtor is not liable *with* the mother within the meaning of § 1322(b)(1).

From the debtor's perspective, the debtor's liability that is described is, at most, a liability directly to her mother. Assuming that there would be an enforceable obligation as between mother and daughter, any such obligation would as a matter of law be separate from the obligations as between mother and creditor.

In the absence of evidence that the creditors were parties to the arrangement between mother and daughter regarding the use of the mother's credit cards, the debtor's mother does not qualify as an individual who is "liable on [the] debt with the debtor" within the meaning of § 1322(b)(1).

The § 1322(b)(1) "however" clause does not apply to mere debts to relatives. If the mother had merely loaned the debtor $24,000 to go shopping, the debtor unquestionably would have to prove that the special classification favoring the mother does not unfairly discriminate against other unsecured creditors. There is little functional difference between loaning money in cash or by authorizing the borrower to incur credit on the lender's account, such as by using the lender's credit card.

Without someone "liable with" the debtor, the § 1322(b)(1) "however" clause cannot apply in this case. It follows that the bankruptcy court's decision on the "however" clause was on an issue that was not presented by the facts and cannot stand.

Correlatively, there was neither an attempt to demonstrate nor a determination by the bankruptcy court that the separate classification in the plan did not unfairly discriminate against the other class of unsecured claims as required by § 1322(b)(1). Since this was an essential element for plan confirmation, the plan could not be confirmed without that determination.

### III

■ Finally, the appellee has questioned the chapter 13 trustee's appellate standing, which is a jurisdictional matter that can be raised for the first time on appeal. *Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 903 (9th Cir. BAP 1999).

■ The chapter 13 trustee has an affirmative statutory duty to appear and be heard on the question of plan confirmation. 11 U.S.C. § 1302(b)(2)(B); *Andrews v. Loheit (In re Andrews)*, 49 F.3d 1404, 1406–07 (9th Cir.1995).

■ This affirmative duty necessarily implies that a chapter 13 trustee has standing to object to confirmation of a plan that does not meet "*each* of the requirements" for plan confirmation. *Andrews*, 49 F.3d at 1408 (emphasis in original).

■ In view of the fact that creditors are not afforded an opportunity to accept or reject chapter 13 plans, this duty of the trustee is particularly important to the proper functioning of chapter 13. The trustee is charged with serving the interests of all creditors, secured and unsecured. *Andrews*, 49 F.3d at 1407–08. Thus, not only did the trustee have the right to appear, he had the obligation to appear and to object.

The Ninth Circuit reasoned in *Andrews* that the requirement to "appear and be heard" under § 1302 would be illusory if it did not extend to the power to object to confirmation. *Id.* at 1408.

By the same reasoning, we conclude that the chapter 13 trustee's § 1302 power would be illusory if it did not also extend to standing to appeal an order confirming a plan over the trustee's objection.

Likewise, the U.S. trustee has filed a brief amicus curiae in support of the chapter 13 trustee. It is settled that the U.S. trustee has appellate standing under 11 U.S.C. § 307. *Stanley v. McCormick, Barstow, Sheppard, Wayte & Carruth (In re Donovan Corp.)*, 215 F.3d 929, 930 (9th Cir.2000).

\* \* \* \* \* \*

In sum, the § 1322(b)(1) "however" clause does not apply in this instance because there is no individual who is "liable with" the debtor on the debts. The bankruptcy court's decision ruling that the clause preempts the § 1322(b)(1) fairness element for plan confirmation related to a purely hypothetical question. Under the factual record as presently constituted, the debtor must show that the plan does not unfairly discriminate against other unsecured creditors even if the bankruptcy court's interpretation of the (irrelevant) "however" clause were to be correct. We imply no view and leave that interesting question to another day.

The order confirming the chapter 13 plan, as to which both the chapter 13 trustee and the U.S. trustee have appellate standing, will be VACATED and the cause REMANDED for further proceedings in which the plan proponent may attempt to prove all essential elements for plan confirmation.

RUSSELL, Bankruptcy Judge, concurring.

Although I agree with the outcome in this case and join part III, I disagree with the approach taken by the majority in parts I and II.

As to part I of the opinion, I would hold that the § 1322(b)(1) "however" clause merely qualifies, rather than preempts, the fairness analysis. I would, therefore, reverse and remand to allow the trial court to determine whether the discrimination is unfair.

As to part II of the opinion, I agree with the majority's initial substantive paragraph:

> The § 1322(b)(1) "however" clause does not apply in a particular case unless three essential elements exist: there must be "consumer debt" that is "consumer debt of the debtor" and as to which there is "an individual [who] is liable on such consumer debt with the debtor." 11 U.S.C. § 1322(b)(1).

I agree with the majority that the debtor has not carried her burden of proof on any of the three elements of § 1322(b)(1). I would stop the analysis at that point. On remand, the debtor may be able to present

sufficient evidence to establish the three elements. If so, it would be important for the panel to have decided the issue discussed in part I to give the trial court guidance in determining whether the particular discrimination is unfair.