**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>CHAPTER 13 TRUSTEE'S MOTIONS FOR DECLARATORY RELIEF CHALLENGING THE CONSTITUTIONALITY OF 28 U.S.C. § 586(e) AND 11 U.S.C. § 1326(b)(2). | BAP No. AZ-24-1012-FSL<br><br>Bk. No. 4:23-mp-00003-BMW |
| DIANNE C. KERNS, Chapter 13 Standing Trustee,<br>　　　　　Appellant,<br>v.<br>DAVID RONALD FOSS; FRANCIS R. MASTELLER; ELVIRA E. MASTELLER; DANIEL JOSEPH SCHNEIDER; ARTHUR ALLEN JOLIVETTE, III; ELISE KALEIMAKALII JOLIVETTE; KEIRA L. ADAMS; JILL H. FORD, Chapter 7 Trustee; MERRICK B. GARLAND, Attorney General of the United States; TARA TWOMEY, Esq., Director, U.S. Trustee Program; U.S. TRUSTEE, PHOENIX,<br>　　　　　Appellees. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Brenda Moody Whinery, Bankruptcy Judge, Presiding

APPEARANCES

Mahesha P. Subbaraman of Subbaraman PLLC argued for appellant; Louisa Soulard argued for appellee Merrick B. Garland, Attorney General of the United States.

Before: FARIS, SPRAKER, and LAFFERTY, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

In order to fund their operations, chapter 13[1] trustees collect a percentage of every debtor's chapter 13 plan payments. In *Evans v. McCallister (In re Evans)*, 69 F.4th 1101 (9th Cir. 2023), *cert. denied sub nom. McCallister v. Evans*, 144 S. Ct. 1004 (2024), the Ninth Circuit held that a chapter 13 trustee is only entitled to receive the percentage fee if the plan is confirmed; otherwise, if the case is dismissed or converted prior to confirmation, the trustee must return all of the debtor's plan payments to the debtor, and the trustee receives nothing.

Appellant Dianne C. Kerns ("Trustee") is a standing chapter 13 trustee in the District of Arizona. In the wake of the *Evans* decision, she challenged the constitutionality of 28 U.S.C. § 586(e)(1) and 11 U.S.C. § 1326(b)(2), arguing that the statutes violate due process because they condition the compensation of quasi-judicial officers on the outcome of plan confirmation. The bankruptcy court declined to reach the merits of her

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

arguments, instead holding that the Ninth Circuit's decision in *Evans* precluded her position.

The bankruptcy court incorrectly held that *Evans* barred the Trustee's constitutional challenge: the parties to that case did not raise, and the Ninth Circuit did not consider, any constitutional argument. Nevertheless, the Trustee's argument fails. She is not a quasi-judicial officer; even if she were, the due process rights she asserts do not belong to her; and her proposed remedy would not address the purported due process problem.

We AFFIRM.

## PROCEDURAL HISTORY

The Trustee is a standing chapter 13 trustee in the District of Arizona. After the Ninth Circuit decided *Evans*, the Trustee filed motions for declaratory relief in five cases assigned to her in which the debtors' cases were dismissed or converted to chapter 7 prior to plan confirmation.

The motions for declaratory relief argued that 28 U.S.C. § 586(e)(1) and 11 U.S.C. § 1326(b)(2) violate constitutional due process because they condition chapter 13 trustees' funding on plan confirmation. She reasoned that chapter 13 trustees perform quasi-judicial functions and contended that due process bars giving quasi-judicial officers a direct and substantial pecuniary interest in plan confirmation.

Alternatively, the Trustee argued that, even if the trustees were not quasi-judicial officers, the statutes are still unconstitutional because the compensation scheme "tempt[s] the misuse of prosecutorial discretion in

3

the discharge of a public duty or office."

The Trustee requested that the bankruptcy court sever the language in the two statutes that gives rise to the due process violation – in other words, allow chapter 13 trustees to collect their percentage fees whether or not a plan is confirmed.

The bankruptcy court denied the Trustee's motions, holding that stare decisis obliged the court to follow *Evans* and reject the Trustee's constitutional challenge. The Trustee timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erred in ruling that stare decisis barred it from considering the merits of the Trustee's motions.

(2) Whether 28 U.S.C. § 586(e)(1) and 11 U.S.C. § 1326(b)(2) are unconstitutional to the extent they provide that chapter 13 trustees may not collect percentage fees unless the bankruptcy court confirms a plan.

## STANDARD OF REVIEW

We review de novo the bankruptcy court's decision that the principle of stare decisis precluded it from deciding the Trustee's motions. *See Alston v. Nat'l Collegiate Athletic Ass'n (In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.)*, 958 F.3d 1239, 1252 (9th Cir. 2020) ("The application of stare decisis and res judicata are questions of law that we

4

review de novo."), *aff'd sub nom. Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69 (2021). Similarly, we review de novo any constitutional challenge to a federal statute. *Res. Funding, Inc. v. Pac. Cont'l Bank (In re Wash. Coast I, L.L.C.)*, 485 B.R. 393, 402 (9th Cir. BAP 2012) ("We review the constitutionality of a federal statute de novo.").

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We may affirm on any basis supported by the record. *Black v. Bonnie Springs Fam. Ltd. P'ship (In re Black)*, 487 B.R. 202, 211 (9th Cir. BAP 2013).

## DISCUSSION

### A.    *Evans* **and stare decisis do not bar the Trustee's constitutional arguments.**

The Trustee argues that the bankruptcy court erred in denying her declaratory relief motions based on the stare decisis effect of the Ninth Circuit's *Evans* decision. We agree with the Trustee.

The doctrine of stare decisis is "the policy of the court to stand by precedent; the term is but an abbreviation of *stare decisis et non quieta movere* – 'to stand by and adhere to decisions and not disturb what is settled.'" *U.S. Internal Revenue Serv. v. Osborne (In re Osborne)*, 76 F.3d 306, 309 (9th Cir. 1996). Generally, it "compels lower courts to follow the decisions of higher courts on a question of law." *Brewster v. Cnty. of Shasta*, 112 F. Supp. 2d 1185, 1191 (E.D. Cal. 2000) (quoting 18 Coquillette et. al, Moore's Federal

5

Practice § 134.01[1] (3d ed. 2000)), *aff'd sub nom. Brewster v. Shasta Cnty.*, 275 F.3d 803 (9th Cir. 2001).

But stare decisis applies only where the appellate court "confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion . . . ." *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019) (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004)). Conversely, a court is not bound to follow an earlier decision on a particular issue if the earlier court did not engage in "reasoned consideration" of that issue because it was not raised in the earlier case. *See, e.g.*, *United States v. Wright*, 46 F.4th 938, 947 (9th Cir. 2022) (holding that, where an issue was not raised in an earlier case, the later court was not foreclosed from considering that issue because, despite factual similarities, the earlier panel "did not mention this issue anywhere in its opinion, much less grant it 'reasoned consideration'" (cleaned up)).

The bankruptcy court denied the Trustee's motions based on the stare decisis effect of *Evans*. But *Evans* said nothing about the constitutionality of 28 U.S.C. § 586(e)(1) and 11 U.S.C. § 1326(b)(2) because the parties did not raise any constitutional question until a post-decision motion. The bankruptcy court was not bound by stare decisis because the Ninth Circuit did not engage in a "reasoned consideration" of, let alone decide, the constitutional question.

It is true that, as the bankruptcy court pointed out, the *Evans* trustee raised the constitutional issue in a motion for rehearing, the Ninth Circuit

denied that motion, and the U.S. Supreme Court denied a petition for writ of certiorari. But neither of these orders has stare decisis effect. *See Maryland v. Balt. Radio Show*, 338 U.S. 912, 919 (1950) (The U.S. Supreme Court "has rigorously insisted that such a denial [of a writ of certiorari] carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review."); *Sherman v. Reilly*, No. CV 05-08-RE, 2007 WL 9747656, at *3 (D. Or. Apr. 4, 2007) ("A denial of rehearing is not persuasive or binding precedent.").

Therefore, we hold that stare decisis was inapplicable and that the bankruptcy court erred in declining to consider the Trustee's declaratory relief motions. Nevertheless, as discussed below, such error was harmless because the Trustee's constitutional arguments are meritless.[2]

---

[2] We need not remand to the bankruptcy court. *United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978) ("When the issue conceded or neglected in the trial court is purely one of law and either does not affect or rely upon the factual record developed by the parties, or the pertinent record has been fully developed, the court of appeals may consent to consider it." (citations omitted)); *see also Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1111 (9th Cir. 2020) (holding that an appellate court may decide a "purely legal" issue in the first instance where "a litigant could not have tried his case differently either by developing new facts in response to or advancing distinct legal arguments against the issue" (cleaned up)). The asserted due process violation presents a pure question of law, the relevant facts are undisputed, and both parties fully argued the constitutional issue on appeal.

**B.    The percentage fee statutes do not violate the Trustee's due process rights.**

**1.    The chapter 13 trustee's compensation and funding are governed by 28 U.S.C. § 586(e)(1) and 11 U.S.C. § 1326(b)(2).**

Chapter 13 trustees play an important role in the chapter 13 process. The Bankruptcy Code requires that "[t]he trustee shall . . . appear and be heard at any hearing that concerns . . . confirmation of a plan . . . ." § 1302(b). "The chapter 13 trustee has an affirmative statutory duty to appear and be heard on the question of plan confirmation." *In re Escarcega*, 573 B.R. 219, 234 (9th Cir. BAP 2017) (quoting *Meyer v. Hill (In re Hill)*, 268 B.R. 548, 554-55 (9th Cir. BAP 2001)), *aff'd in part, vacated in part, rev'd in part sub nom. In re Sisk*, 962 F.3d 1133 (9th Cir. 2020); *see also Andrews v. Loheit (In re Andrews)*, 155 B.R. 769, 771 (9th Cir. BAP 1993) ("The duty to appear and be heard under § 1302(b)(2)(B) encompasses the duty to review plans for compliance with confirmation requirements and to make a recommendation to the court on confirmation."), *aff'd*, 49 F.3d 1404 (9th Cir. 1995). We have noted the importance of the chapter 13 trustee's role:

> Imposing a duty on chapter 13 trustees to object to plans whenever appropriate is necessary to permit the bankruptcy court to do its job. . . . [T]he bankruptcy court has an independent obligation, even in the absence of any creditor objection, to ascertain that all plan confirmation requirements are met. The bankruptcy court could not effectively carry out this responsibility without the chapter 13 trustee's assistance.

*In re Escarcega*, 573 B.R. at 234. In carrying out these duties, "[t]he trustee is

charged with serving the interests of all creditors, secured and unsecured." *Id.* (quoting *In re Hill*, 268 B.R. at 555).

Chapter 13 trustees are entitled to compensation and expense payment for this important work. The trustee receives compensation in an amount fixed by the Attorney General (after consulting with the United States Trustee) that is equal to the compensation paid to senior employees in the executive branch, plus corresponding benefits. The trustee is also entitled to payment of actual, necessary expenses under a budget approved by the Attorney General after consultation with the United States Trustee. 28 U.S.C. § 586(e)(1)(A).

To fund the trustee's compensation and expenses, the trustee collects post-confirmation a percentage of each plan payment. Section 1326(a)(1)(A) provides that chapter 13 debtors must commence plan payments to the trustee within thirty days after the filing of the plan or order for relief. Section 1326(a)(2) provides that such payment "shall be retained by the trustee until confirmation or denial of confirmation," and that, once the court confirms a plan, the trustee must distribute the payments "in accordance with the plan as soon as practicable." Whenever the trustee makes a distribution under the plan, the trustee is paid a "percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28[.]" § 1326(b)(2). The percentage is fixed by the Attorney General (not to exceed ten percent of plan payments), "based on such maximum annual compensation and the actual, necessary expenses incurred by such

individual as standing trustee." 28 U.S.C. § 586(e)(1).[3] If the total percentage fees collected by the trustee exceeds the trustee's approved compensation and expenses, the excess is deposited into the United States Trustee System Fund. 28 U.S.C. § 586(e)(2).

**2.      Standing chapter 13 trustees are not quasi-judicial officers.**

The Trustee's primary argument is that she is a quasi-judicial officer and that it is constitutionally impermissible to give her a direct pecuniary interest in the outcome of a case. We reject this view of the chapter 13 trustee's position.

**a.      The Trustee's "decision" on a recommendation for plan confirmation does not make her a quasi-judicial officer akin to a bankruptcy judge with final decision-making authority in a judicial proceeding.**

The Trustee contends that, because plan confirmation is a judicial function and the chapter 13 trustee "shall appear and be heard" and offer a recommendation on plan confirmation, the trustee is a quasi-judicial officer. She believes that, for due process purposes, the trustee's role is indistinguishable from that of the bankruptcy judge. For example, she

---

[3] The Handbook for Chapter 13 Standing Trustees provides that "[a] standing trustee's percentage fee is fixed by the Director [of the Executive Office for United States Trustees] by delegation from the Attorney General, after consultation with the United States Trustee for the region in which the standing trustee serves. The standing trustee has no authority to negotiate a percentage fee other than that fixed by the Director." U.S. Dep't of Just., Handbook for Chapter 13 Standing Trustees at 2-3 (Oct. 1, 2012) (citation omitted), https://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-13-handbooks-reference-materials.

thinks that her recommendation "controls" plan confirmation; at oral argument, she referred to herself as "the decider"; and elsewhere, she says (somewhat more modestly) that her recommendations on plan confirmation are "often dispositive."

The Trustee relies on cases holding that due process is violated when a judicial or similar decisionmaker has a pecuniary interest in the outcome. For example, in *Tumey v. Ohio*, 273 U.S. 510 (1927), state law empowered a mayor to try cases involving alleged violations of liquor laws and provided that the mayor could collect a fee only if there were a conviction. The court held that "it certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." *Id.* at 523.

Similarly, in *Connally v. Georgia*, 429 U.S. 245 (1977), state law empowered a justice of the peace to issue search warrants and provided that the unsalaried justices of the peace would be paid $5 only when they issued a warrant. The Court held that this violated the due process rights of a defendant convicted of marijuana possession:

> The justice is not salaried. . . . His financial welfare, therefore is enhanced by positive action and is not enhanced by negative action. The situation, again, is one which offers "a possible temptation to the average man as a judge . . . or which might lead him not to hold the balance nice, clear and true between

11

the State and the accused." It is, in other words, another situation where the defendant is subjected to what surely is judicial action by an officer of a court who has "a direct, personal, substantial, pecuniary interest" in his conclusion to issue or to deny the warrant.

*Id.* at 250.

In *Ward v. Village of Monroeville*, 409 U.S. 57 (1972), the mayor sat as a judge to decide ordinance violations and traffic offenses in the "mayor's court" and collected fees, fines, and costs that constituted a substantial portion of the village's income. Similarly, in *Caliste v. Cantrell*, 937 F.3d 525 (5th Cir. 2019), the magistrate judge's bail decisions generated funds that helped fund court reporters, judicial secretaries, and law clerks, where a portion of the bail bond was directed to a fund for the judge's expenses.[4] The Trustee relies on these cases to argue that an official whose funding for her office is based on the collection of fees dependent on her decision has a "partisan interest" and therefore cannot render impartial decisions. She contends that she has a partisan interest in funding her office, which is at odds with her position as a "judicial" officer.

 All of these cases are inapplicable because, unlike the mayor in *Tumey* or *Ward*, the justice of the peace in *Connally*, or the magistrate judge in *Caliste*, the chapter 13 trustee is not the decisionmaker. The chapter 13

---

[4] Similarly, another case cited by the Trustee, *Meyers v. Shields*, 61 F. 713 (C.C.N.D. Ohio 1894), involves municipal auditors overseeing tax proceedings. In that situation, the auditor is the sole and final decisionmaker who is more akin to the bankruptcy judge than the chapter 13 trustee.

trustee is undoubtedly an asset to the bankruptcy court and often persuades the bankruptcy court to follow his or her recommendation. But the chapter 13 trustee is not the person who hears all of the arguments and decides the case. The bankruptcy judge is ultimately and solely responsible for deciding whether to confirm a plan. The Trustee's recommendation in a particular case is only that: a recommendation to the court that the court may or may not follow. It is beyond the pale to suggest that the Trustee's recommendation is "dispositive" or that bankruptcy judges do not independently consider and decide the merits of each case. *Cf. United Student Aid Funds, Inc., v. Espinosa*, 559 U.S. 260, 277 (2010) (holding that "bankruptcy courts have the authority – indeed, the obligation – to direct a debtor to conform his plan" to the requirements applicable to that case, even if there is no objection).

Rather, this case is analogous to *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980). Regional Department of Labor officials were empowered to assess penalties for child labor violations, and the monetary fines were used to fund the department's enforcement efforts. The respondent in one such case argued that this scheme "created an impermissible risk and appearance of bias by encouraging the assistant regional administrator to make unduly numerous and large assessments of civil penalties." *Id.* at 241. The U.S. Supreme Court disagreed and held that an administrative prosecutor did not have to meet *Tumey's* impartiality standards for a judicial official, because the administrative law judge made the final ruling,

not the administrative prosecutor. *Id.* at 248 ("The rigid requirements of *Tumey* and *Ward*, designed for officials performing judicial or quasi-judicial functions, are not applicable to those acting in a prosecutorial or plaintiff-like capacity."). Contrary to the Trustee's contention, her role is akin to that of the administrative prosecutor and not like that of the administrative law judge. The administrative prosecutor was not a quasi-judicial officer for due process purposes because another officer – the administrative law judge—was the decisionmaker. *Cf. id.* at 247 (stating that an administrative prosecutor is not a decisionmaker under *Tumey* because "[h]e hears no witnesses and rules on no disputed factual or legal questions"). Likewise, the Trustee is not a quasi-judicial officer because another officer – the bankruptcy judge – makes the decisions.

The Trustee also likens herself to a federal magistrate judge because "[m]agistrate judges advise courts whether to grant summary-judgment motions." This is another false comparison. Magistrate judges are members of the judiciary who preside over disputes between litigants and render judicial decisions that can bind parties with the force of law. It is true that sometimes magistrate judges make recommendations or other decisions that are reviewed de novo, but that is not true of all of their decisions. Further, all judges (other than Supreme Court justices) make decisions that are reviewed de novo (such as conclusions of law), but no one would deny that they are nevertheless "judges." In contrast, a chapter 13 trustee's recommendations are *never* entitled to *any* legal deference. The Trustee is

14

not equivalent to a federal magistrate judge or any other federal judicial officer.[5]

### b. The Trustee's quasi-judicial immunity does not imply that she is a quasi-judicial officer.

The Trustee further argues that, because chapter 13 trustees enjoy quasi-judicial immunity, they must be quasi-judicial officers. It is true that the word "quasi-judicial" appears in both "quasi-judicial immunity" and "quasi-judicial officer," but the similarity ends there. As the Ninth Circuit explained in *Curry v. Castillo (In re Castillo)*, 297 F.3d 940 (9th Cir. 2002), *as amended* (Sept. 6, 2002), "[j]udicial or quasi-judicial immunity is not available only to those who adjudicate disputes in an adversarial setting. Rather, the immunity is extended in appropriate circumstances to non jurists 'who perform functions closely associated with the judicial process.'" *Id.* at 948 (citation omitted). Having quasi-judicial immunity does not make one a quasi-judicial officer for purposes of the Due Process Clause.[6]

---

[5] The Trustee points out that judicial law clerks, who are not judges yet make recommendations and are closely involved in the court's decision-making process, cannot accept compensation contingent on a particular case outcome. But law clerks are not like judges. Law clerks are judicial employees who must comply with the terms of their employment. Law clerks cannot accept contingent compensation (or any compensation other than their salaries), not because of the Due Process Clause, but rather because that is one of the rules that the judiciary imposes on its employees.

[6] The Trustee argues that *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976), supports her position because the Court said that the "functional comparability" of a person's "judgments to those of [a] judge" confers the title of a "quasi-judicial officer." But as we discussed above, the Trustee's decisions with respect to plan confirmation are

15

###### c. The Trustee has not demonstrated a due process violation arising from her supposed "prosecutorial discretion" or enforcement function.

The Trustee argues that, even if she is not a quasi-judicial officer, due process prohibits a funding scheme where standing trustees must compromise their free and fair exercise of prosecutorial discretion.

The Trustee's reliance on *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987), for this proposition is unavailing. In that case, the petitioners were found guilty of criminal contempt but argued that the district court erred by appointing the opposing party's attorneys – rather than disinterested individuals – to prosecute the contempt charge. *Id.* at 789-90. The Court agreed, holding that prosecutors should be disinterested and that the appointment of interested special prosecutors was error because it offers no "assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice." *Id.* at 814.

*Young* is not applicable because the Trustee does not represent both a private party to litigation and the government as a prosecutor; indeed, the Trustee does not "represent" any party to the case (other than herself). Further, contrary to the Trustee's implication, the Court did not hold that the appointment of a prosecutor who was not disinterested violated the constitutional guarantee of due process. *See id.* at 814-15 (Blackmun, J.,

---

not "judgments" similar to that of a judge for the purpose of the Due Process Clause.

16

concurring) (stating in a concurrence that he would go further than the majority and hold that the practice violated due process). Rather, it held that such an appointment was error because of various public policy considerations. In other words, *Young* concerned policy, not due process, and the Ninth Circuit in *Evans* already considered and rejected the policy issues surrounding its decision. The court specifically rejected the trustee's policy argument "that holding in Debtors' favor would incentivize trustees to violate their duty to object to plans prior to confirmation, knowing that they only get paid if a plan is confirmed." *In re Evans*, 69 F.4th at 1109-10.

Similarly, the Trustee's reliance on *Marshall* is also misplaced. The Court held that the administrative prosecutors were not quasi-judicial officials subject to *Tumey*, but it stated, "We do not suggest . . . that the Due Process Clause imposes no limits on the partisanship of administrative prosecutors. . . . A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." 446 U.S. at 249-50. But it declined to "say with precision what limits there may be on a financial or personal interest of one who performs a prosecutorial function . . . ." *Id.* at 250. It held that the administrative prosecutors were not subject to such scrutiny because "[n]o governmental official stands to profit economically from vigorous enforcement of the child labor provisions of the Act. The salary of the assistant regional administrator is fixed by law." *Id.*

17

In this case, the Trustee has not shown that her financial stake raises due process concerns. Increased percentage fee collections cannot benefit her personally: her maximum salary and operating expenses are set annually by the Attorney General; and any percentage fee collections in excess of those amounts are ultimately paid over to the government. *Cf. id.* at 251 (stating that there is no due process concern where the organization "has minimized any potential for bias[,]" such as where funds are allocated to offices based on actual expenses, "not on the basis of the amounts of penalties collected"). Therefore, she cannot personally "profit" (in the manner described by *Tumey* and *Connally*) from greater collections of percentage fees.

Similarly, she offered no evidence that the reduction in percentage fees resulting from *Evans* exposes her to any risk of loss. She produced no evidence that her total percentage fee collections under the *Evans* interpretation will be less than her maximum compensation plus her approved expenses. In short, there is nothing in the record to show that she is personally worse off under *Evans* than she would be if the percentage fee were structured as she wishes.

The Trustee hypothesizes that the *Evans* interpretation might disadvantage chapter 13 trustees with very low caseloads. But she offers no evidence that any such trustee actually exists. Such a situation would only exist if the Attorney General blundered by (for example) appointing more standing chapter 13 trustees than the caseload warranted. In any event,

even if the Trustee could offer such evidence, her due process argument would still fail for the reasons discussed herein.

3. **Even if the Trustee were a quasi-judicial officer, the percentage fee system does not endanger the Trustee's due process rights.**

The Trustee's due process argument also fails because the due process rights that she asserts are not her rights.

In *Tumey*, *Connally*, and similar cases cited by the Trustee, defendants brought the due process challenges, and the Court upheld those challenges. But nothing in those decisions remotely suggests that the compensation schemes violated the due process rights of the mayor in *Tumey* or the justice of the peace in *Connally*, rather than the defendants in those cases. She cites no case holding that the decisionmaker (as the Trustee purports to be) suffered a due process violation. In short, the Trustee is not among the parties who could conceivably be injured by the type of due process violation identified in *Tumey* and *Connally*.[7]

---

[7] The Trustee's reliance on due process rights that do not belong to her calls her standing into question. In general, parties only have standing to assert their own rights and claims, unless the litigant has "suffered an 'injury in fact,' . . . ; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1991) (citations omitted). Although it is an exceptionally close call, we hold that the Trustee has third-party standing in this instance to assert creditors' due process claims relating to the percentage fee: at oral argument, the Trustee's counsel suggested that her mere involvement in the percentage fee system, which she regards as improper, harms her; she owes legal duties to the creditors; and the disproportion between the benefit to any individual creditor of asserting the due process claims and the cost of

19

**4. Even if the Trustee's due process rights were violated, the Trustee's proposed remedy lacks logic.**

Even if we were to accept the Trustee's arguments that the percentage fee as interpreted in *Evans* is inconsistent with due process, her proposed remedy would not resolve the issue.

The Trustee argues that requiring payment of the percentage fee only if a plan is confirmed creates a due process problem because it gives trustees an incentive to recommend confirmation when they should not do so. But the Trustee's proposed remedy – allowing payment of the percentage fee out of all plan payments even if the plan is not confirmed – would not eliminate the bias. If the debtor is unable to confirm a plan promptly, the bankruptcy court will dismiss the bankruptcy case, § 1307(c)(1), (5), the debtor will stop making plan payments, and the percentage fee will cease. Because confirmation of the plan keeps the percentage fees flowing for a longer period, plan confirmation will usually, and might always, produce more money for trustees than denial of confirmation. Thus, trustees would still have a financial interest in plan confirmation.

Further, the chapter 13 trustee always has a financial incentive to argue for larger plan payments, because larger plan payments mean higher percentage fees. Larger plan payments benefit creditors but harm debtors.

---

asserting those claims hinders their assertion.

Thus, if the Trustee is right, the percentage fee system always violates debtors' due process rights.

The logic of the Trustee's argument would also call into question the fee system in chapter 7 cases. Chapter 7 trustees are paid a percentage of all money distributed to creditors. § 326(a). This gives them a personal financial incentive to attack the debtor's exemptions, challenge creditor's liens, sell property in which there is little or no equity, and take other actions that may be adverse to the interest of the debtor and certain creditors and (if the resulting collections are only sufficient to pay administrative claims) may benefit no one other than the trustee. If a financial incentive favoring such behavior violates due process, the chapter 7 compensation system would be questionable.

Finally, her proposal ignores the desirable incentive that the *Evans* interpretation creates. The Code contemplates that chapter 13 plans will be confirmed swiftly. Congress required courts to hold the hearing on plan confirmation in the first few months of the case, § 1324(b), and empowered courts to dismiss chapter 13 cases or convert them to chapter 7 for various forms of delay, § 1307(c). Speedy plan confirmation is important because the trustee may not make any distributions to creditors until the plan is confirmed. § 1326(a)(2). Requiring the trustee to wait for her payment until the plan is confirmed aligns the incentives of the trustee with the interests of creditors.

The percentage fee system in chapter 13 cases undoubtedly has some

21

anomalous features. The amount generated by the percentage fee depends entirely on the amount of the plan payments, which often has nothing to do with the amount of effort and expense required of the trustee in any particular case. Therefore, the chapter 13 trustee may be overpaid in easy cases and underpaid in hard ones. The percentage fee also often has little or nothing to do with the debtor's ability to pay: many debtors file chapter 13 cases to cure defaulted mortgage debts; many of them need every penny of their disposable income to pay their current mortgage payments and cure their arrears; and therefore the trustee's percentage fee may make chapter 13 relief too costly for debtors who badly need it. We cannot say, however, that Congress violated the Trustee's (or anyone's) due process rights when it adopted the "rough justice" of a percentage fee system for chapter 13 cases.

## CONCLUSION

The Ninth Circuit's *Evans* decision did not bar the bankruptcy court from considering the Trustee's challenge to the constitutionality of 28 U.S.C. § 586(e)(1) and 11 U.S.C. § 1326(b)(2). Regardless, we hold that the statutory scheme providing for the collection of percentage fees does not violate due process. Accordingly, we AFFIRM.